165 So.2d 466 (1964)
246 La. 540
Daniel M. and Valerie JOHNSON et al.
v.
COLLECTOR OF REVENUE.
No. 46769.
Supreme Court of Louisiana.
January 20, 1964.
On Rehearing June 8, 1964.
Rehearing Denied July 1, 1964.
*467 Chapman L. Sanford, Emmett E. Batson, Levi A. Himes, Gilbert D. Litton, Jr., Baton Rouge, for defendant-appellant.
Monroe & Lemann, Malcolm L. Monroe, Benj. R. Slater, Jr., New Orleans, for plaintiffs-appellees.
HAMITER, Justice.
The plaintiffs in these consolidated cases are contesting income tax deficiencies assessed against them by the Collector of Revenue of the State of Louisiana. They urge that the Louisiana Income Tax statute. Chapter 1, Title 47, of the Louisiana Revised Statutes of 1950, does not authorize the assessments; and that, if it does, the statute is in violation and in contravention of the due process clause of the Constitution of the United States.
The Louisiana Board of Tax Appeals, following a hearing before it, approved the levying of the deficiencies. Plaintiffs, thereupon, obtained a review of that ruling in the district court. It held that while the provisions of LRS 47:159, subd. H (relied on by the collector) authorized the assessments the said section offends the due process clause of the federal constitution insofar as it affects these non-resident plaintiffs. Accordingly, it reversed the order of the Board of Tax Appeals, and rendered judgment in favor of plaintiffs disallowing in full the taxes, penalties and interest assessed. The collector is appealing from that judgment.
The case was submitted to the district court on the record of the hearing previously had before the Board of Tax Appeals wherein the pertinent facts were stipulated. From the stipulation it appears that plaintiffs, who are not now and have never been residents of Louisiana, were the owners of all of the stock (at no time ever physically located in this state) in the Edward Mead Johnson Corporation, a Delaware entity, the principal place of business of which was in Evansville, Indiana, where the management of its affairs occurred. However, the corporation was qualified to do business in the State of Louisiana, its registered office having been the law offices of its legal counsel in New Orleans. It owned an undivided interest in certain lands situated in Plaquemines Parish, Louisiana, which, over the years, had enhanced considerably in value.
In 1951 the corporation was completely dissolved by a liquidation made pursuant to the provisions of Section 112(b)(7) of the United States Internal Revenue Code. In the liquidation the assets were exchanged to the plaintiff shareholders for their stock in proportion to their respective ownerships. As a result of the increase in the market value of the Louisiana Lands, owned *468 by the corporation and distributed to the shareholders in exchange for their stock, a gain was imputed to each plaintiff.
Contending that under the provisions of LRS 47:159, subd. H the gain imputed to the shareholders was allocable to this state and taxable here, the Louisiana Collector of Revenue assessed the contested deficiencies against plaintiffs individually. These deficiencies, including taxes, interest and penalties, amounted to the total sum of $17,256.34.
In 1951 (when the liquidation occurred) Section 159, subd. H, appearing in Sub-part B of Part II of Chapter 1 of Sub-title II of LRS Title 47, provided: "Situs of stock cancelled or redeemed in liquidation. In cases where property located in Louisiana is received by a shareholder in the liquidation of a corporation, the stock cancelled or redeemed in the liquidation shall, for purposes of determining taxable gain under this chapter, be deemed to have its taxable situs in this state to the extent that the property of the corporation distributed in liquidation is located in Louisiana. If only a portion of the property distributed in liquidation is located in Louisiana, only a corresponding portion of the gain realized by a shareholder shall be considered to be derived from Louisiana sources. * * *"
The Collector of Revenue recognizes that the taxes were, to quote from his brief to this court, "imposed upon the stockholders rather than the corporation itself." And he virtually concedes that but for the language of such section relied on, which assertedly places the situs of the stock in Louisiana, there would be no basis for levying the taxes claimed. Thus, again quoting from his brief, he states: "* * * In the absence of the provisions in R.S. 47:159H that portion of the distribution of Louisiana property which went to non-residents would totally escape the incidence of the tax. * * *"
The plaintiffs agree that if such section stood alone it would fit the situation which exists here, and that they would be subject to the taxes levied. However, they contend that since they have always been and are now non-residents of Louisiana any taxes imposed on them must be computed under the provisions of Part II, Sub-part F of the Income Tax law, particularly the provisions contained in LRS 47:241-243 which relate specifically to the computation of income of (and which are found under the heading entitled) "Nonresident Individuals and Foreign Corporations." In those sections the following pertinent recitations occur: "Net income subject to tax The net income of a nonresident individual or foreign corporation subject to the tax imposed by this Chapter shall be the sum of the net allocable income earned within or derived from sources within this state, as defined in R.S. 47:243, * * *." Section 241. "Segregation of items of gross incomeAll items of gross income not otherwise exempted in this Chapter, shall be segregated into two general classes as follows: (1) The class of gross income to be designated as `allocable income' shall include the following: * * * (b) Profits from sales or exchanges of capital assets; * * *." Section 242. "Computation of net allocable income from Louisiana sourcesItems of gross allocable income shall be allocated directly to the states from which such items of income are derived, on the following bases: * * * (3) Other interest, dividends, and profits from sales and exchanges of capital assets consisting of incorporeal property or rights, shall be allocated to the state in which the securities or credits producing such income have their situs, which shall be at the business situs of such securities or credits, if they have been so used in connection with the taxpayer's business as to acquire a business situs, or in the absence of such a business situs, shall be at the legal domicile of the taxpayer in the case of an individual or at the commercial domicile of the taxpayer in the case of a corporation; * * *." Section 243. (Italics ours.)
According to these unequivocal provisions the situs of an incorporeal upon *469 which a non-resident individual realizes a profit as the result of a sale or an exchange thereof is deemed to be at the domicile of the owner of that intangible, and the profit is allocable to the state of such domicile for income tax purposes unless the incorporeal has acquired a business situs elsewhere. This was the interpretation that we placed on these provisions in United Gas Corporation v. Fontenot, 241 La. 488, 129 So.2d 748. Therein we said: "Thus it may be seen from these provisions that the legislature has provided in clear and unambiguous language that whether the taxpayer is a nonresident individual or a foreign corporation, the only portion of the income derived from intangibles that are allocated to other states are: * * * (2) interest (other than that derived from the notes and accounts of foreign customers), dividends, and profits from sales and exchanges of capital assets consisting of incorporeal property or rights where the securities and credits producing such income have acquired a situs in another state. In the event the income is derived from such securities or credits, then the allocation is to be (a) to the state where they have acquired a `business situs' and, if they have not acquired a `business situs' in another state, then (b) to the state of legal domicile if the taxpayer is an individual, and (c) the state of `commercial domicle" if the taxpayer is a corporation.
"* * * if the income is other interest, dividends, and profits from securities or credits that have acquired a `business situs' in another state, then that income is allocated to the state of `business situs' whether received by a nonresident individual or a foreign corporation. If no such `business situs' has been established in another state under the latter condition, then the income in the case of the individual is allocated to his legal domicile; * * *.
"To say it another way, all of the gross income from the intangible assets of a nonresident individual or a foreign corporation deemed to be earned within or derived from sources within Louisiana is allocated to the legal domicile of the former and the `commercial domicile" of the latter unless * * * derived from securities or credits having a `business situs' in another state, in which events, the gross income from such source is allocated to these respective states."
In the United Gas Corporation case we concluded that the plaintiff's income from its intangibles were properly allocable to this state only because of the finding that such corporate taxpayer, which owned the intangibles and realized profits therefrom, had its commercial (and its actual legal) domicile here. The plaintiffs in the present case, on the other hand, are nonresident individuals; and under the above quoted statutory provisions of LRS 47:241-243 the situs of the stock is deemed to be at their respective domiciles in the absence of a business situs in some other state.
Therefore, it clearly appears that these last mentioned provisions are in direct and irreconcilable conflict with those of LRS 47:159, subd. H, and we must determine which take precedence in and govern the instant dispute. And, as in almost all cases involving statutory conflict, the resolution is not without some difficulty. However, in view of certain well recognized rules of statutory construction, as well as of the history and of certain other provisions of the Income Tax statute itself, we have concluded that the special provisions of Subpart F of Part II (LRS 47:241-243) are controlling.
The original Income Tax statute, Act 21 of 1934 (which has been amended on innumerable occasions), provided for the taxation of income of non-residents derived from sources within and without this state (see Section 34 thereof). "Supplement F" of that Act (Sections 62-68) set forth special rules peculiar only to foreign corporations. And stipulations relative to "Distributions by Corporations", generally, were contained in Section 32 thereof.
The 1934 Act was almost in the same form (insofar as the issue involved here is concerned) when Act 158 of 1944 amended the *470 mentioned Section 32 by adding thereto a sub-section "(h)", the provisions of which are substantially those carried into the Revised Statutes of 1950 as Section 159, subd. H of Title 47.
But in 1948 the Legislature, by Act 354, made changes in "Supplement F" which had formerly dealt solely with the exceptions and variations as to foreign corporations. The sections comprising "Supplement F" (62 to 68) were rewritten so as to set out a complete system for computing allocable and apportionable income and deductions for non-resident individuals, as well as for foreign corporations. And Section 34(b) was amended so as to provide that with respect to a non-resident individual or foreign corporation the net income was to be computed as provided in "Supplement F" of such Act.
Among the revisions of "Supplement F" were provisions contained in Section 64 of the 1948 statute that "* * * profits from sales and exchanges of capital assets consisting of incorporeal property or rights, shall be allocated to the state in which the securities or credits producing such income have their situs, which shall be at the business situs of such securities or credits, if they have been so used in connection with the taxpayer's business as to acquire a business situs, or, in the absence of such a business situs, shall be at the legal domicile of the taxpayer in the case of an individual or at the commercial domicile of the taxpayer in the case of a corporation; * * *."
"Supplement F" of the 1948 Act later because "Sub-part F" of the Revised Statutes of 1950 (LRS 47:241-248); and it was entitled, as aforeshown, "Non-resident Individuals and Foreign Corporations".
From the foregoing history of the income tax statute it is obvious that the Legislature by Act 354 of 1948 intended to deal with the entire subject matter of computing taxable income of special classes, namely, non-resident individuals and foreign corporations; and it seems clear that such legislation, therefore, should take precedence over all prior provisions on the subject.
Of course, LRS 47:159, subd. H was also included in the 1950 Revised Statutes.' Nevertheless, its general provisions are in conflict with those specific ones of LRS 47:-241-243, and in resolving this conflict the intention of the Legislature is most important.
The general rule with regard to such a conflict in the same legislation is, as set forth in 82 C.J.S. verbo Statutes § 347b, page 720, as follows: "General and special provisions in a statute should stand together, if possible, and be read together and, if possible, harmonized with a view to giving effect to a consistent legislative policy. Where, however, general provisions, terms, or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part, the particular provisions must govern or control, as a clearer and more definite expression of the legislative will, unless the statute as a whole clearly shows a legislative intention to the contrary, or some other canon of statutory construction compels a contrary conclusion. * * *" See also Crawford on Statutory Construction, page 267, Section 167.
Moreover, in construing the intent of the entire tax law, as enacted into the Revised Statutes, particular reference must be made to LRS 47:161 (the second section following that relied on by the collector) that: "In the case of a nonresident individual or foreign corporation, items of gross income, expenses, losses and deductions, from whatever source received or incurred, not otherwise exempted by this Chapter, shall be included in the taxpayer's return; but, for the purpose of this Chapter, the amount of tax shall be computed only upon the net income earned within or derived from sources within this state, such net income to be computed as provided in Sub-part F of Part II of this Chapter." (Italics ours.)
*471 Also, LRS 47:22, entitled "Special Classes of Taxpayers", provides: "The application of the general provisions of Part I, and Sub-parts A and B of Part II of this Subtitle to each of the following special classes of taxpayers, shall be subject to the exceptions and additional provisions found in Part II of this Sub-title applicable to such class, as follows:

* * * * * *
"(4) Foreign corporations, Sub-part G of Part II." (Note:Sub-parts A and B of Part II include Sections 121 through 167. Further, the reference to Sub-part G of Part II is obviously a typographical error and was intended as Sub-part F of Part II, this being shown by its source: Act 21 of 1934.)
Therefore, our conclusion is that in carrying the income tax statute (with its conflicting amendments) into the Revised Statutes the Legislature particularly exhibited its intention that the Sections of Part II, Sub-part F should continue to comprise the law with respect to the special classes to whom it refers non-resident individuals and foreign corporationsin computing income tax assessments; and that any conflict between the provisions thereof and those contained in Sub-parts A and B of Part II (where LRS 47:159, subd. H is found) should be resolved in favor of Subpart F.
Having concluded that plaintiffs' net taxable income should be computed according to the provisions of Sub-part F, we further hold that the imputed gain is not allocable to Louisiana and hence not subject to the attempted tax assessments. This is because the shares of stock on which the gain was realized had not acquired a business situs here and the owners thereof were domiciled elsewhere.
There is no evidence whatever in the record from which it could even be inferred that such a business situs had been acquired in Louisiana; in fact, the stipulation entered into by the parties tends to negative such a finding. Furthermore, the Collector of Revenue has never suggested, through these entire proceedings, that there was any basis for such a finding; and, in recognizing that if LRS 47:159, subd. II be inapplicable the imputed gain would be nontaxable, he has virtually conceded that no business situs in Louisiana for the shares of stock could have been shown. Of course, if he had established that such shares had acquired a business situs here, the gain could and would have been allocated to Louisiana under the provisions of Sub-part F (LRS 47:241 et seq.) and taxable in this state.
In a supplemental brief filed in this court the collector insists that the provisions of 159, subd. H are special and, for that reason, they should take precedence over the conflicting specific ones found in LRS 47:-241-243. However, he overlooks those provisions contained in LRS 47:22 and 161, quoted above.
But conceding arguendo that Section 159, subd. H is special in nature, as contended, there still remains a conflict between the two sets of specific provisions in question, for each set would place the situs of the shares of stock at a different location insofar as these plaintiffs are concerned. And this being true we must give recognition to the rule of construction relative to taxing statutes that "* * * where the intent or meaning of tax statutes, or statutes levying taxes, is doubtful, they are, unless a contrary legislative intention appears, to be construed most strongly against the government and in a favor of the taxpayer or citizen. Any doubts as to their meaning are to be resolved against the taxing authority and in favor of the taxpayer, or, as it is sometimes put, the person upon whom it is sought to impose the burden. * * *" 51 American Jurisprudence, verbo Taxation, page 366, Section 316. See also 51 American Jurisprudence, verbo Taxation, page 616, Section 650; 47 C.J.S. verbo Internal Revenue § 53a, page 173, and *472 Crawford on Statutory Construction, page 502, Section 257.
Our holding that LRS 47:159, subd. H does not authorize the imposition of the assessments contested herein makes unnecessary a determination of the question of the constitutionality of that section insofar as these plaintiffs are concerned.
For the reasons assigned the judgment of the district court, which reversed the order of the Board of Tax Appeals and disallowed the taxes, penalties and interest assessed by the Louisiana Collector of Revenue against these plaintiffs, is affirmed.
McCALEB, Justice (dissenting).
The majority opinion effects a judicial repeal of R.S. 47:159, subd. H on the ground that it is so inconsistent with and contrary to the provisions of R.S. 47:241-243 as to render it inoperative. To this I cannot agree.
Preliminarily, it is apt to observe that R.S. 47:159, subd. H is clear and unequivocal in its terms and fits exactly the situation obtaining in this case. Under the general provisions of our Income Tax Law (see Sub-part B of the Part I of R.S. 47:31(2)), all non-resident individuals are required to pay a tax on net income derived from property located or from business transacted or from sources within the State except as thereinafter exempted. And in Part II of the supplemental provisions of the statute, which deal with capital gains and losses (see Sub-part B, Sections 131-167) and apply to non-residents as well as residents, it is provided by Section 159, subd. C that amounts distributed in complete liquidation of a corporation (domestic or foreign) shall be treated as in full payment in exchange for the stock. Section 159, subd. H, with which we are here concerned, applying to non-residents of this State, reads:
"H. Situs of stock cancelled or redeemed in liquidation. In cases where property located in Louisiana is received by a shareholder in the liquidation of a corporation, the stock cancelled or redeemed in the liquidation shall, for purposes of determining taxable gain under this chapter, be deemed to have its taxable situs in this state to the extent that the property of the corporation distributed in liquidation is located in Louisiana. If only a portion of the property distributed in liquidation is located in Louisiana, only a corresponding portion of the gain realized by a shareholder shall be considered to be derived from Louisiana sources. * * *" (Italics mine.)
Since the foregoing provision is admittedly clear and unambiguous, it appears to me that this Court violates the fundamental canon of statutory construction (Article 13 of the Civil Code) in disregarding the letter of the law under the pretext of pursuing its spirit. But the majority say that its action is justified because other provisions of the Income Tax Law, particularly those of R.S. 47:241-243 contained in Sub-part F of Part II, relating to the computation of income of non-resident individuals and foreign corporations, are in direct conflict with the letter of R.S. 47:159, subd. H.
I doubt the validity of the resolution that a conflict exists but, if it does, I believe that any asserted inconsistency in the provisions can be harmonized and reconciled by proper construction of the statute as a whole. We are duty bound to adopt a construction which gives effect to all provisions of the law as this will carry out the true intent of the Legislature and is in keeping with the principle that repeals by implication are not favored by law particularly when the alleged conflicting provisions are part of the same statute. See City of New Orleans v. Board of Supervisors, 216 La. 116, 43 So.2d 237 and authorities there cited. See also Chappuis v. Reggie, 222 La. 35, 62 So.2d 92.
The majority concludes that R.S. 47:159, subd. H is inconsistent with the provisions of R.S. 47:241-243 in that Section 243 declares that, in computing net allocable income *473 from Louisiana sources by sales and exchanges of capital assets consisting of incorporeal property or rights, allocation shall be made to the State in which the securities have their situs "* * * which shall be at the business situs of such securities or credits, if they have been so used in connection with the taxpayer's business as to acquire a business situs, or, in the absence of such a business situs, shall be at the legal domicile of the taxpayer in the case of an individual or at the commercial domicile of the taxpayer in the case of a corporation; * * *". It is then reasoned that, inasmuch as the business situs of the liquidating corporation was in Evansville, Indiana, where the taxpayers resided and the stock certificates were located, there was no legal business situs in Louisiana and that, therefore, the contrary provisions of R.S. 47:159, subd. H, fixing the taxable situs of stock in this State when it is used in exchange for Louisiana property distributed in liquidation of a corporation, cannot be applied.
The basic error I find in this resolution is that it fails to take into account and give full consideration to all of the provisions of R.S. 47:243(3). That section, after stating that the profits from sales and exchanges of capital assets consisting of incorporeal property or rights shall be allocated to the State in which the securities producing such income have their situs, declares, "* * * which shall be at the business situs of such securities or credits, if they have been so used in connection with the taxpayer's business as to acquire a business situs * * *." (Italics mine.)
Thus, in the case at bar, as long as the taxpayers' stock certificates remained in Indiana the stock evidenced thereby, under the fictional maxim "mobilia sequuntur personam", had a taxable situs in Indiana. But, when these securities were used in the liquidation of the corporation for the purpose of exchanging them in part for real property owned by the corporation, the taxpayers themselves employed this stock in connection with their business in procuring Louisiana property so that it acquired a business situs in Louisiana for the purpose of effecting the exchange insofar as such exchange transferred to the taxpayers the Louisiana property. This is precisely what R.S. 47:159, subd. H provides and, therefore, far from being in conflict with the provisions of R.S. 47:243, it is consonant therewith and renders the profit derived by these taxpayers amendable to Louisiana law.
In fine, I do not perceive the claimed inconsistency between R.S. 47:159, subd. H and the other provisions of the statute relied on by the taxpayers. But, if there by any doubt as to the interpretation to be given the various provisions, this Court, in my humble opinion, is not warranted in concluding that the clear and unambiguous letter of R.S. 47:159, subd. H, which deals with a special situation of exchanges of stock for property in Louisiana upon liquidation of a foreign corporation, has been impliedly repealed by the same Legislature that passed it on the theory that it is so utterly inconsistent with the other provisions of the Act so as to require the holding that those general provisions override the special provision with which the Court is presently confronted.
I respectfully dissent.
SANDERS, Justice (dissenting).
In this income tax proceeding, the state seeks to invoke LSA-R.S. 47:159, subd. H declaring the situs of stock exchanged for Louisiana property in the liquidation of a corporation to be in Louisiana. The majority holds that the section is in conflict with LSA-R.S. 47:243, relating to the computation of income of non-residents, and hence must fall. I am unable to agree with this holding.
Both sections were incorporated in the Revised Statutes of 1950. Both sections have received legislative attention from time to time. See Act No. 445 of 1950, Act No. 170 of 1958, and Act No. 443 of 1958.
Under general principles of statutory construction, the Court should give meaning *474 and effect to both sections, if it can reasonably do so. As I view it, LSA-R.S. 47:159, subd. H is a special provision covering the taxable gain from the distribution of property in corporate liquidation. LSA-R.S. 47:243 is the general provision for the computation of the income of non-residents. Under the special circumstances of corporate liquidation, such as the instant case, LSA-R.S. 47:159, subd. H applies. I express no opinion as to its constitutionality at this time.
For the reasons assigned, I respectfully dissent.
FOURNET, Chief Justice (dissenting).
I cannot agree with the majority holding that the State of Louisiana, in levying assessments against non-resident shareholders of a foreign corporation on the capital gains realized by them cannot take into consideration the stock cancelled or redeemed in the liquidation of that corporation for which they received real property in Louisiana as a consideration, as is clearly and specifically provided by R.S. 47:159 (H),[1] such holding being predicated on this section's purported conflict with R.S. 47:-241-243general provisions governing the computation of the taxable net income of non-resident individuals and foreign corporations earned in Louisiana.
In so holding, the majority has not only repealed R.S. 47:159(H) by implication, contrary to the jurisprudence holding "there is a strong presumption against implied repeal," and where two acts relating to the same subject are passed at the same legislative session, "they are to be construed" together, if possible, so as to reconcile them, giving effect to each," but also the jurisprudence pointing out that the "Revised Statutes constitute a single act of the Legislature, adopted as a whole," and different sections "should be regarded not as separate acts, but as simultaneous expressions of the legislative will, and all provisions should be construed together and reconciled whenever possible." Moreover, in reaching the conclusion it has, the majority disregarded the cannon of statutory construction with respect to our Revised Statutes, to the effect that we should "not search through the history of the acts carried into the Revised Statutes for defects, when a reading of the sections, disassociated from their history, presents no insuperable difficulty of construction."[2]
As a matter of fact, one of the very authorities relied on by the majority supports this jurisprudence, for it is pointed out in a quoted portion from Crawford on Statutory Construction that "Where * * * general provisions, terms, or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part, the particular provisions must govern or control, as a clear and more definite expression of the legislative will, unless the statute as a whole clearly shows a legislative intention to the contrary, or some other canon of statutory construction compels a contrary conclusion." Section 167, at page 267. (The emphasis has been supplied by me.)
*475 It is my opinion that the legislature in adopting R.S. 47:159(H) intended to, and did in fact, in clear and unambiguous language, deal with a specific subject not covered by the general provisions as set forth in R.S. 47:241-43, that is, to provide that when property is received for the redemption of shares of stock in the liquidation of a corporation, if that property is located in Louisiana, the stock is deemed to have its situs here. It should be given that effect. It can be given that effect without in any manner conflicting with the provisions of R.S. 47:241-243, dealing with the annual income realized in Louisiana by non-resident individuals or foreign corporations, as these provisions are clearly distinguishable. This has been very ably demonstrated in the dissenting opinion of Mr. Justice McCaleb.

On Rehearing
SANDERS, Justice.
We granted a rehearing in these consolidated cases to review our holding that the gain realized by the non-resident taxpayers who, in the liquidation of a corporation, received property of enhanced value located in Louisiana for the cancellation of their stock was not taxable under the Louisiana Income Tax Law. To reach this result, we held that LSA-R.S. 47:241-243 (dealing with the income of non-resident individuals) was applicable and that LSA-R.S. 47:159, subd. H (dealing with the situs of stock surrendered in the liquidation of a corporation for property in Louisiana) was not applicable.
The pertinent facts may be restated briefly. The non-resident plaintiffs were the sole stockholders of the Edward Mead Johnson Corporation, organized in the State of Delaware. The management of the business affairs of the corporation was conducted from Evansville, Indiana. The corporation was duly authorized to do business in Louisiana and maintained its registered office in New Orleans. The sole investment of the corporation was an interest in lands in Plaquemines Parish, Louisiana. Because of the development of oil and gas production on these lands, they increased substantially in value.
In 1951, the Edward Mead Johnson Corporation was liquidated. The plaintiffs surrendered their stock certificates (which were never physically located in Louisiana) and received an interest in the Louisiana lands. Based upon the increase in market value of these lands, the Louisiana Collector of Revenue imputed a gain to each plaintiff and assessed a tax on it under the provisions of LSA-R.S. 47:159, subd. H. These deficiency assessments aggregated $17,256.34. LSA-R.S. 47:159, subd. H provides:
"In cases where property located in Louisiana is received by a shareholder in the liquidation of a corporation, the stock cancelled or redeemed in the liquidation shall, for purposes of determining taxable gain under this chapter, be deemed to have its taxable situs in this state to the extent that the property of the corporation distributed in liquidation is located in Louisiana. If only a portion of the property distributed in liquidation is located in Louisiana, only a corresponding portion of the gain realized by a shareholder shall be considered to be derived from Louisiana sources. * * *"
While recognizing that if the above section stood alone it would be applicable to the tax situation here, we held that Sub-part F (LSA-R.S. 47:241-245) contained the "complete system" for computing the income of non-residents and that LSA-R.S. 47:159, subd. H, on which the Commissioner had relied, must yield to it. We are now of the view that we erred in so holding.
It is true that Sub-part F deals with the allocation and apportionment of the income of non-residents. However, it does not purport to be complete in itself. Clear indicia that the Sub-part is not to be isolated from the other provisions of the Chapter are found in its sections. For example, LSA-R.S. 47:242 refers to gross income "not otherwise *476 exempted in this Chapter." LSA-R.S. 47:243 refers to expenses, losses and other deductions "allowable under this Chapter." LSA-R.S. 47:244 likewise refers to tax provisions outside the Sub-part. As we now view it, the complete system is the entire chapter, with its interrelated provisions.
Under familiar rules of statutory construction, the court must consider the provisions of the chapter together so as to give meaning to all of them, if it can reasonably do so. A construction that raises a conflict between the provisions should be avoided when the court can reasonably effectuate the will of the legislature. These rules are particularly applicable here since the statutory provisions with which we are concerned were enacted together in the Louisiana Revised Statutes of 1950.[1]
Sub-part F contains the general provisions governing the allocation of the income of non-residents. LSA-R.S. 47:243 (3) provides, among other things, that the profits from the sale or exchange of incorporeal property shall be allocated to the state where the securities have their business situs "if they have been so used in connection with the taxpayer's business as to acquire a business situs, or, in the absence of such a business situs, shall be at the legal domicile of the taxpayer * * *."[2]
LSA-R.S. 47:159, subd. H is a specific provision applying to the redemption of stock in the liquidation of corporations. The section provides that stock surrendered for property in Louisiana "shall, for purposes of determining taxable gain under this chapter, be deemed to have its taxable situs in this state to the extent that the property of the corporation distributed in liquidation is located in Louisiana." When used in reference to stock owned by a non-resident, taxable situs means business situs.
Thus considered together, Sections 243 and 159, subd. H form a consistent pattern. Section 159, subd. H places the gain to a non-resident from the liquidation-surrender of stock for Louisiana property within the income allocation structure of Section 243.
We conclude, as did the district court, that LSA-R.S. 47:159, subd. H applies to the stock surrendered by the plaintiffs in the liquidation of the Edward Mead Johnson Corporation.
Remaining for consideration is the constitutionality of LSA-R.S. 47:159, subd. H. The plaintiffs have strenuously attacked the statute throughout this proceeding. The court, of course, has a duty to sustain it unless it clearly violates the organic law. Any doubt must be resolved in favor of the validity of a solemn expression of the legislative will.
The district court found that the Edward Mead Johnson Corporation conducted no business in Louisiana and that the assignment of a Louisiana situs to the stock was wholly fictitious and arbitrary, rendering the statute unconstitutional. We cannot agree with this holding.
Intangible property can have no physical location. Its situs must be fixed by law.[3] We readily assume that a state cannot arbitrarily assign the situs of stock owned by a non-resident to the state for income tax purposes. The converse of this assumption, however, is a sound principle of law. When there is a reasonable basis in fact, the situs of the stock of a non-resident may be fixed in the state for tax purposes.
*477 The Supreme Court of the United States has laid down the test in State of Wisconsin v. J. C. Penney Company:[4]
"* * * a state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society.
"Constitutional provisions are often so glossed over with commentary that imperceptibly we tend to construe the commentary rather than the text. We cannot, however, be too often reminded that the limits on the otherwise autonomous powers of the states are those in the Constitution and not verbal weapons imported into it. `Taxable event', `jurisdiction to tax', "business situs", `extraterritoriality', are all compendious ways of implying the impotence of state power because state power has nothing on which to operate. These tags are not instruments of adjudication but statements of result in applying the sole constitutional test for a case like the present one. That test is whether property was taken without due process of law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return."
To apply the test, whether the state has given anything for which it can ask return, requires an examination of the facts in relation to the practical operation of the income tax statute.
The corporation owned Louisiana lands, upon which oil and gas production was developed. As a result of the mineral development, the value of the land substantially increased in the hands of the corporation. If the corporation had sold or exchanged the lands to a party other than a stockholder, the corporation would have paid a Louisiana income tax on the gain arising from the increased value.[5] LSA-R.S. 47:159, subd. H is designed to apply when the corporation, instead of selling the lands in an arms-length transaction, conveys them in liquidation to the stockholders for the redemption of their stock. In the absence of LSA-R.S. 47:159, subd. H, the gain passed on to the stockholders in the liquidation would escape the income tax.[6] The legislative policy is clear: The gain is to be taxed whether it arises from an armslength sale by the corporation or from the vesting of the property in the stockholders in redemption of their stock.
Clearly, such a gain from oil-producing lands in Louisiana reflects the protection and opportunities that the state has afforded. It is true that the state opened its doors to the business of the corporation. But the privilege of doing business in Louisiana is not the important thing here. The state also did some things in reference to the property: State laws protected the ownership, maintenance, and development of the lands; the exploration and production of minerals took place under the aegis of a conservation program created by state law and administered by state personnel;[7] finally, the vesting of the title of these lands in the plaintiffs was accomplished under Louisiana law.
The plaintiffs attempt to discount these benefits on the theory that they accrued to the corporation, who then owned the lands, rather than to the taxpaying stockholders. *478 We cannot accept this theory. It overlooks the fact that the land itself benefitted as evidenced by its substantial increase in value. The stockholders realized the gain when they surrendered their stock and received the property.
The taxing power exerted by the state in the present case bears a substantial fiscal relation to the protection, opportunities, and benefits provided by the state. In short, the state has given something for which it can ask a return. We conclude that LSA-R.S. 47:159, subd. H is constitutional.[8]
For the reasons assigned, the judgment of the district court is reversed, the demands of the plaintiffs are rejected, and the suit is dismissed at plaintiffs' costs.
HAMITER, J., dissents, adhering to the reasons originally assigned by him.
HAMLIN, J., dissents, adhering to the reasons assigned with original opinion herein.
SUMMERS, J., dissents, adhering to the original opinion.
NOTES
[1] R.S. 47:159, under the heading "Distributions by corporations," provides, in subsection (H), with the sub-title "Situs of stock cancelled or redeemed in liquidation," that "In cases where property located in Louisiana is received by a shareholder in the liquidation of a corporation, the stock cancelled or redeemed in the liquidation shall, for purposes of determining taxable gain under this chapter, Be deemed to have its taxable situs in this state to the extent that the property of the corporation distributed in liquidation is located in Louisiana. If only a portion of the property distributed in liquidation is located in Louisiana, only a corresponding portion of the gain realized by a shareholder shall be considered to be derived from Louisiana sources." (The emphasis has been supplied by me.)
[2] See, State v. Shushan, 206 La. 415, 19 So. 2d 185; City of New Orleans v. Board of Supervisors of Elections, 216 La. 116, 43 So.2d 237; Chappuis v. Reggie, 222 La. 35, 62 So.2d 92; and State ex rel. Fudickar v. Heard, 223 La. 127. 65 So.2d 112.
[1] See Chappuis v. Reggie, 222 La. 35, 62 So.2d 92 and City of New Orleans v. Board of Supervisors, 216 La. 116, 43 So. 2d 237.
[2] Prior to Act No. 170 of 1958.
[3] See Sugar et ux. v. State of Louisiana, Collector of Revenue, 243 La. 217, 142 So.2d 401 and United Gas Corporation v. Fontenot, Collector of Revenue, 241 La. 488, 129 So.2d 748.
[4] 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267, 270-271.
[5] LSA-R.S. 47:243.
[6] The plaintiffs suggest that the tax would be collected when the property was later sold. This presupposes, of course, that the stockholders would sell it. The constitution does not require the tax be postponed.
[7] See LSA-R.S. 30:1-63.
[8] See International Harvester Co. v. Wisconsin Department of Taxation, 322 U.S. 435, 64 S.Ct. 1060, 88 L.Ed. 1373; State of Wisconsin v. J. C. Penney Co., 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267; Curry v. McCanless, 307 U.S. 357, 59 S. Ct. 900, 83 L.Ed. 1339, 123 A.L.R. 162; and Shaffer v. Carter, 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445.