# WISCONSIN ET AL. *v.* J. C. PENNEY CO.

No. 46. Argued November 20, 1940.—Decided December 16, 1940.

*Messrs. Harold H. Persons,* Assistant Attorney General of Wisconsin, and *James Ward Rector,* Deputy Attorney General, with whom *Mr. John E. Martin,* Attorney General, was on the brief, for petitioners.

*Mr. W. H. Dannat Pell,* with whom *Messrs. Roswell Dean Pine, Jr.* and *G. Burgess Ela* were on the brief, for respondent.

438

Mr. Justice Frankfurter delivered the opinion of the Court.

Whether the tax imposed by § 3 of Chapter 505 of the Wisconsin Laws of 1935 may apply to a foreign corporation licensed to do business in Wisconsin without offending the Fourteenth Amendment of the Constitution is the question before us. The statute is quoted in

the margin.[1]  When this question originally came before the Supreme Court of Wisconsin it found no constitu-

---

[1] Section 3, Chapter 505, Laws of Wisconsin, 1935, as amended by Chapter 552, Laws of Wisconsin, 1935:

"Section 3. Privilege Dividend Tax. (1) For the privilege of declaring and receiving dividends, out of income derived from property located and business transacted in this state, there is hereby imposed a tax equal to two and one-half per centum of the amount of such dividends declared and paid by all corporations (foreign and local) after the passage and publication of this act and prior to July 1, 1937. Such tax shall be deducted and withheld from such dividends payable to residents and non-residents by the payor corporation.

"(2) Every corporation required to deduct and withhold any tax under this section shall, on or before the last day of the month following the payment of the dividend, make return thereof and pay the tax to the tax commission, reporting such tax on the forms to be prescribed by the tax commission.

"(3) Every such corporation hereby made liable for such tax, shall deduct the amount of such tax from the dividends so declared.

"(4) In the case of corporations' doing business within and without the state of Wisconsin, such tax shall apply only to dividends declared and paid out of income derived from business transacted and property located within the state of Wisconsin.. The amount of income attributable to this state shall be computed in accordance with the provisions of chapter 71. In the absence of proof to the contrary, such dividends shall be presumed to have been paid out of earnings of such corporation attributable to Wisconsin under the provisions of chapter 71, for the year immediately preceding the payment of such dividend. If a corporation had a loss for the year prior to the payment of the dividend, the tax commission shall upon application, determine the portion of such dividend paid out of corporate surplus and undivided profits derived from business transacted and property located within the state.

"(5) Dividends paid by a subsidiary corporation to its parent shall not be subject to the tax herein imposed provided that the subsidiary and its parent report their income for taxation under the provisions of chapter 71 on a consolidated income return basis; or both corporations report separately.

"(6) The provisions of this section shall not apply to dividends declared and paid by a Wisconsin corporation out of its income which it has reported for taxation under the provisions of chapter 71, to the

tional infirmity in such an exaction. *State ex rel. Froedtert G. & M. Co. v. Tax Commission,* 221 Wis. 225; 265 N. W. 672; 267 N. W. 52. But deeming itself constrained by its reading of this Court's decision in *Connecticut General Co. v. Johnson,* 303 U. S. 77, the Wisconsin Supreme Court in the present case found that the statute ran afoul the Due Process Clause insofar as it covered locally licensed foreign corporations. 233 Wis. 286; 289 N. W. 677. Inasmuch as important issues affecting the exertion of the taxing power of the states are involved, we brought this and its companion cases here. 310 U. S. 618, 619.

For many years, corporations chartered by other states but permitted to carry on business in Wisconsin have been subject to a general corporate income tax act on earnings attributable to their Wisconsin activities. The state has, of course, power to impose such a tax. *U. S. Glue Co. v. Oak Creek,* 247 U. S. 321; *Underwood Typewriter Co. v. Chamberlain,* 254 U. S. 113. "For the privilege of declaring and receiving dividends, out of income derived from property located and business transacted in" Wisconsin, an exaction "equal to two and one-half per centum of the amount of such dividends declared and paid by all corporations (foreign and local)" is the additional tax now-before us. In the enforcement of this measure against foreign corporations, the amount of in-

extent that the business of such corporation consists in the receipts of dividends from which a privilege dividend tax has been deducted and withheld and the distribution thereof to its stockholders.

"(7) For the purposes of this section dividends shall be defined as in section 71.02, except that the tax herein imposed shall not apply to stock dividend or liquidating dividends.

"(8) The tax hereby levied, if not paid within the time herein provided, shall become delinquent and when delinquent shall be subject to a penalty of two per cent on the amount of the tax and interest at the rate of one-half per cent per month until paid.

"(9) The tax hereby imposed shall, when collected by the tax commission, be paid by it into the state treasury."

come attributable to Wisconsin is calculated according to the same formula as that employed in assessing the general corporate income tax paid by such foreign corporations. The practical operation of this legislation is to impose an additional tax on corporate earnings within Wisconsin but to postpone the liability for this tax until such earnings are paid out in dividends. In a word, by its general income tax Wisconsin taxes corporate income that is taken in; by the Privilege Dividend Tax of 1935 Wisconsin superimposed upon this income tax a tax on corporate income that is paid out.

As pressures for new revenues become more and more insistent, ways and means of meeting them present to a state not only the baffling task of tapping fresh sources of revenue but of doing so with due regard to a state's existing taxing system. The tax now assailed gains nourishing significance when placed in the context of the Wisconsin taxing system of which it became a part. Wisconsin relied heavily upon taxation of incomes and largely looked to this source to meet the increasing demands of the depression years. But a special Wisconsin feature was exemption of dividends from personal taxation. See *Welch* v. *Henry*, 305 U. S. 134, 142–43. This exemption persisted while regular and surtax rates against personal incomes were raised. Attempts at relief from the unfairness charged against this exemption of dividends, particularly advantageous to the higher brackets, were steadily pressed before the Wisconsin Legislature. To relieve local earnings of foreign corporations from a dividend tax would have had a depressive effect on wholly local enterprises. The Privilege Dividend Tax was devised to reduce at least in part the state's revenue losses due to dividend exemptions, and also to equalize the burdens on all Wisconsin earnings, regardless of the formal home of the corporation.

Had Wisconsin, as part of its price for the privileges it afforded foreign corporations within its borders, ex-

plicitly provided for a supplementary tax on the Wisconsin earnings of such corporations, but postponed liability for the tax until such earnings were to be paid out in dividends, the power of Wisconsin to do so would hardly be questioned. Compare *Continental Assurance Co.* v. *Tennessee, ante,* p. 5. But because the legislative language ran "For the privilege of declaring and receiving dividends, out of income derived from property located and business transacted in this state" the court below raised the barrier of the Fourteenth Amendment. Respondent is a Delaware corporation having its principal offices in New York; its meetings are held in the latter state where the dividends are voted and the dividend checks are drawn on New York bank accounts. Since the process for declaring dividends and the details attending their distribution among the stockholders transpired outside Wisconsin, although the exaction was apportioned to the earnings derived from Wisconsin, the state court concluded that the tax was an attempt by Wisconsin to levy an exaction on transactions beyond Wisconsin's borders.

The case thus reduces itself to the inquiry whether Wisconsin has transgressed its taxing power because its supreme court has described the practical result of the exertion of that power by one legal formula rather than another—has labeled it a tax on the privilege of declaring dividends rather than a supplementary income tax.

A tax is an exaction. Ascertainment of the scope of the exaction—what is included in it—is for the state court. But the descriptive pigeon-hole into which a state court puts a tax is of no moment in determining the constitutional significance of the exaction. "In whatever language a statute may be framed, its purpose must be determined by its natural and reasonable effect." *Henderson* v. *Mayor of New York,* 92 U. S. 259, 268. Such has been the repeated import of the cases which only recently were well summarized by the guiding for-

mulation for adjudicating a tax measure, that "in passing on its constitutionality we are concerned only with its practical operation, not its definition or the precise form of descriptive words which may be applied to it." *Lawrence* v. *State Tax Commission,* 286 U. S. 276, 280.

The Constitution is not a formulary. It does not demand of states strict observance of rigid categories nor precision of technical phrasing in their exercise of the most basic power of government, that of taxation. For constitutional purposes the decisive issue turns on the operating incidence of a challenged tax. A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society.

Constitutional provisions are often so glossed over with commentary that imperceptibly we tend to construe the commentary rather than the text. We cannot, however, be too often reminded that the limits on the otherwise autonomous powers of the states are those in the Constitution and not verbal weapons imported into it. "Taxable event," "jurisdiction to tax," "business situs," "extraterritoriality," are all compendious ways of implying the impotence of state power because state power has nothing on which to operate. These tags are not instruments of adjudication but statements of result in applying the sole constitutional test for a case like the present one. That test is whether property was taken without due process of law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return. The substantial privilege of carrying on

business in Wisconsin, which has here been given, clearly supports the tax, and the state has not given the less merely because it has conditioned the demand of the exaction upon happenings outside its own borders. The fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction. See *Continental Assurance Co.* v. *Tennessee, supra.* See also *Equitable Life Society* v. *Pennsylvania,* 238 U. S. 143; *Maxwell* v. *Bugbee,* 250 U. S. 525; *Compañia de Tabacos* v. *Collector,* 275 U. S. 87, 98; *New York ex rel. Cohn* v. *Graves,* 300 U. S. 308; *Atlantic & Pacific Tea Co.* v. *Grosjean,* 301 U. S. 412; *Atlantic Refining Co.* v. *Virginia,* 302 U. S. 22; *Curry* v. *McCanless,* 307 U. S. 357.

This analysis is merely a reformulation of the classic approach of this Court to the taxing power of the states. *Lawrence* v. *State Tax Commission, supra,* p. 280. Ambiguous intimations of general phrases in opinions torn from the significance of concrete circumstances, or even occasional deviations over a long course of years, not unnatural in view of the confusing complexities of tax problems, do not alter the limited nature of the function of this Court when state taxes come before it. At best, the responsibility for devising just and productive sources of revenue challenges the wit of legislators. Nothing can be less helpful than for courts to go beyond the extremely limited restrictions that the Constitution places upon the states and to inject themselves in a merely negative way into the delicate processes of fiscal policy-making. We must be on guard against imprisoning the taxing power of the states within formulas that are not compelled by the Constitution but merely represent judicial generalizations exceeding the concrete circumstances which they profess to summarize.

Nor does *Connecticut General Co.* v. *Johnson, supra,* present a barrier against what Wisconsin has done. Its

presuppositions recognize the scope of the state taxing power we have outlined. 303 U. S. 77, 80, 82. In the precise circumstances presented by the record it was found that the tax neither, in its measure nor in its incidence was related to California transactions. Here, on the contrary, the incidence of the tax as well as its measure is tied to the earnings which the State of Wisconsin has made possible, insofar as government is the prerequisite for the fruits of civilization for which, as Mr. Justice Holmes was fond of saying, we pay taxes. See, for instance, his dissent in *Compañia de Tabacos* v. *Collector, supra,* p. 100.

Because the Wisconsin Supreme Court found the statute to be invalid as to foreign corporations in the position of the respondent it had no occasion to pass on certain claims relating to the application of the statute to the specific dividends here involved. We therefore remand the case for the determination of such questions as are open in the light of this opinion.

*Reversed.*

MR. JUSTICE ROBERTS.

I assume that the principle still holds good that a state, a member of the sisterhood of states in the Republic, cannot extend her sovereignty by legislation so as to prohibit, to regulate, or to tax property or transactions of citizens of other sovereign states lying outside her boundaries and regulated by the law of the state of domicile or residence. I assume also that, where a state has, by law, fixed the conditions upon which a corporate citizen of another state may enter to transact business, she may not thereafter extend her sovereignty to matters not within her competence, in the guise of annexing other and further conditions or burdens upon the transaction

of the corporation's business within her borders. Those activities which have a real and substantial relation to the business transacted by the citizen of another state within her confines are, of course, subject to regulation and to taxation. It would be mere affectation to cite the adjudications of this court which are founded upon these propositions. I have thought that these principles were of the very warp and woof of the constitutional system which binds the states together in a federal union. Attempted transgressions of these limits of state sovereignty have time and again run afoul of the Fourteenth Amendment.

The respondent admittedly receives income in Wisconsin. No one questions the power of Wisconsin to lay a tax upon the receipt of that income. It has done so. It is said that the challenged exaction is merely an additional income tax,—this, notwithstanding that the tax is not called an income tax, has been held by the highest court of Wisconsin not to be an income tax but an excise upon a privilege,—in the view that in testing the constitutionality of an exaction this court examines for itself the nature and incidence of the tax and disregards mere names and descriptive epithets. With that principle I have no quarrel, but I think the opinion of the court demonstrates that the tax here in question is, and can be, sustained only by a disregard of it. Let me illustrate my meaning. Assuming that, by statute, an ad valorem tax on property is prohibited and an income tax permitted. The terms used in the statute necessarily have a conventional connotation. One cannot intelligently discuss things or actions except by using the names commonly employed to describe them. Concepts of ad valorem taxation on property and taxation of income are clear and easily discriminable. What would be

said of a decision construing such a statutory provision so as to hold a tax of so many cents on the dollar upon property an income tax because, forsooth, all the property assessed has been received as the fruits of labor, of industry, or of capital, upon the theory that, as the property had come into existence at some remote date as income, the tax was an income tax? I think that is precisely what has been done in this case.

The facts are not in dispute. The respondent receives income in many states. That income is forwarded to its home office after bearing whatever tax is laid upon its receipt in the state of receipt. Thereupon the funds so forwarded become a portion of the general mass of the respondent's property, held and administered at its general office. The funds may be employed in the extension of its business; they may be held as insurance against future business losses or they may be distributed to its stockholders in dividends. Their management and their disbursement have no relation to the original receipt of income save only the fact that, like most property, they are built up as the fruits of income. Their use and their disbursement does not depend on any law of Wisconsin and cannot be controlled by any such law. The act of disbursing them, whether in payment of corporate obligations or as dividends, is one wholly beyond the reach of Wisconsin's sovereign power, one which it cannot effectively command, or prohibit or condition. That distribution cannot be the subject of an excise tax by the State of Wisconsin. So much the state admits.

Under the challenged statute, a presumption is created which is shown in the case of the assessment against the respondent for the years in question to be contrary to the fact,—namely, that an arbitrarily assumed proportion of the dividend is paid out of the respondent's earnings in Wisconsin for the year immediately preceding the payment of such dividend. By the very terms of the Act,

the tax is laid not on the corporation but on the stockholder receiving the dividend and, by confession, thousands of such stockholders are not residents of Wisconsin. The corporation is the mere collector of the tax and the penalty for failure to collect it is that the corporation must pay it. If the exaction is an income tax in any sense it is such upon the stockholder and is obviously bad. It cannot, except by a perversion of the term and the affixing of an arbitrary label, be denominated a tax upon the income of the respondent.

The explanation of the reason and purpose for imposing the tax, disclosed in the opinion of the court, serves to condemn it. If Wisconsin found that dividend income of stockholders of domestic corporations escaped taxation, and should bear it, an effective way to reach the dividend receipts of the stockholders of such corporations was to place a tax upon the receipt of dividends by them. But such a levy upon the stockholders of a foreign corporation, not resident within Wisconsin, obviously was impossible although that is exactly what was attempted by the statute in question. We are now told that this is not a fair exposition of the law but that, on the contrary, and in the teeth of the known facts, what Wisconsin did was to lay a supplementary income tax upon foreign corporations. This is simply to take the name of a well understood concept and assign that name as a label to something which in ordinary understanding never fell within such concept. By this process any exaction can be tortured into something else and then justified under an assumed name.

The respondent owns property in various states of the Union. It is reasonable to suppose that much of that property has been purchased out of corporate surplus, that is, out of past earnings. An ad valorem tax by Wisconsin on property so acquired could be quite as easily justified under the label of an income tax because

.the property represented income once received, as the present tax, on the declaration and receipt of dividends out of earned surplus.

Upon the facts, the tax is levied on what lies outside the sovereignty of Wisconsin. Its attempted collection is a violation of the Due Process Clause of the Fourteenth Amendment and should be stricken down.

: The Supreme Court of Wisconsin could not have decided otherwise in the light of a recent expression of this court on the subject. In reaching its decision it professedly followed and applied *Connecticut General Life Insurance Co.* v. *Johnson,* 303 U. S. 77. There a Connecticut life insurance company did business in California under license from that state. It entered into contracts with other insurance companies, also licensed to do business in California, reinsuring them against loss on policies written by them in California on the lives of California residents. The contracts were made in Connecticut, premiums were paid there, and the losses, if any, were there payable. California imposed a tax upon the privilege of the company to do business within California. The tax was measured by the gross premiums received. California officials attempted to collect the tax on the premiums received by the Connecticut corporation under the reinsurance contracts in question. The Supreme Court of California sustained the tax. In that case, as in this, the highest state court described and defined the tax. There the tax was denominated "a franchise tax enacted for the privilege of doing business in the state." Here, the Supreme Court of Wisconsin has denominated the exaction as a privilege or excise tax imposed upon the transfer of property. By the very process the court now professes to employ of disregarding the name given to the tax by the state court, this court, in the *Connecticut General Life Insurance Co.*

case, reached the conclusion that the State of California could not impose the tax on the activities of the Connecticut company which were not within its jurisdiction. Citing many decisions of this court, it was there said:

"But the limits of the state's legislative jurisdiction to tax, prescribed by the Fourteenth Amendment, are to be ascertained by reference to the incidence of the tax upon its objects rather than the ultimate thrust of the economic benefits and burdens of transactions within the state."

The very argument now invoked in support of the present decision was repudiated by the court in the *Connecticut* case in these words:

"It is said that the state could have lawfully accomplished its purpose if the statute had further stipulated that the deduction should be allowed only in those cases where the reinsurance is effected in the state or the reinsurance premiums paid there. But as the state has placed no such limitation on the allowance of deductions, the end sought can be attained only if the receipt by appellant of the reinsurance premiums paid in Connecticut upon the Connecticut policies is within the reach of California's taxing power. Appellee argues that it is, because the reinsurance transactions are so related to business carried on by appellant in California as to be a part of it and properly included in the measure of the tax; and because, in any case, no injustice is done to appellant since the effect of the statute as construed is to redistribute the tax, which the state might have exacted from the original insurers but did not, by assessing it upon appellant to the extent to which it has received the benefit of the allowed deductions."

In describing the incidence of the void tax this court said, as it might with equal accuracy be said of the instant tax:

"Apart from the facts that appellant was privileged to do business in California, and that the risks reinsured were originally insured against in that state by companies also authorized to do business there, California had no relationship to appellant or to the reinsurance contracts. No act in the course of their formation, performance or discharge, took place there. The performance of those acts was not dependent upon any privilege or authority granted by it, and California laws afforded to them no protection."

And finally the court concluded:

"All that appellant did in effecting the reinsurance was done without the state and for its transaction no privilege or license by California was needful. The tax cannot be sustained either as laid on property, business done, or transactions carried on within the state, or as a tax on a privilege granted by the state."

I think that the judgment below should be affirmed.

The CHIEF JUSTICE, MR. JUSTICE McREYNOLDS and MR. JUSTICE REED concur in this opinion.