On Rehearing
SANDERS, Justice.
We granted a rehearing in these consolidated cases to review our holding that the gain realized by the non-resident taxpayers who, in the liquidation of a corporation, received property of enhanced value located in Louisiana for the cancellation of their stock was not taxable under the Louisiana Income Tax Law. To reach this result, we held that LSA-R.S. 47:241-243 (dealing with the income of non-resident individuals) was applicable and that LSA-R.S. 47:159, subd. H (dealing with the situs of stock surrendered in the liquidation of a corporation for property in Louisiana) was not applicable.
The pertinent facts may be restated briefly. The non-resident plaintiffs were the sole stockholders of the Edward Mead Johnson Corporation, organized in the State of Delaware. The management of the business affairs of the corporation was conducted from Evansville, Indiana. The corporation was duly authorized to do business in Louisiana and maintained its registered office in New Orleans. The sole investment of the corporation was an interest in lands in Plaque-mines Parish, Louisiana. Because of the development of oil and gas production on these lands, they increased substantially in value.
In 1951, the Edward Mead Johnson Corporation was liquidated. The plaintiffs surrendered their stock certificates (which were never physically located in Louisiana) and received an interest in the Louisiana lands. Based upon the increase in market value of these lands, the Louisiana Collector of Revenue imputed a gain to each plaintiff and assessed a tax on it under the provisions of LSA-R.S. 47:159, subd. H. These defici *567 ency assessments aggregated $17,256.34. LSA-R.S. 47:159, subd. H provides:
“In cases where property located in Louisiana is received by a shareholder in the liquidation of a corporation, the stock cancelled or redeemed in the liquidation shall, for purposes of determining taxable gain under this chapter, be deemed to have its taxable situs in this state to the extent that the property of the corporation distributed in liquidation is located in Louisiana. If only a portion of the property distributed in liquidation is located in Louisiana, only a corresponding portion of the gain realized by a shareholder shall be considered to be derived from Louisiana sources. * * * ”
While recognizing that if the above section stood alone it would be applicable to the tax situation here, wc held that Sub-part F (LSA-R.S. 47:241-245) contained the “complete system” for computing the income of non-residents and that LSA-R.S. 47 :159, subd. H, on which the Commissioner had relied, must yield to it. We arc now of the view that we erred in so holding.
It is true that Sub-part F deals with the allocation and apportionment of the income of non-residents. However, it does not purport to be complete in itself. Clear indicia that the Sub-part is not to be isolated from the other provisions of the Chapter are found in its sections. For example, LSA-R.S. 47:242 refers to gross income “not otherwise exempted in this Chapter.” LSA-R.S. 47:243 refers to expenses, losses and other deductions "allowable under this-Chapter.” LSA-R.S. 47:244 likewise refers to tax provisions outside the Sub-part. As we now view it, the complete system is, the entire chapter, with its interrelated provisions.
 Under familiar rules of statutory construction, the court must consider the-provisions of the chapter together so as to-give meaning to all of them, if it can reasonably do so. A construction that raises a conflict between the provisions should be avoided when the court can reasonably effectuate the will of the legislature. These-rules are particularly applicable here since the statutory provisions with which we are concerned were enacted together in the Louisiana Revised Statutes of 1950.[1]
Sub-part F contains the general provisions governing the allocation of the income of non-residents. LSA-R.S. 47:243-(3) provides, among other things, that the profits from the sale or exchange of incorporeal property shall be allocated to the state where the securities have their business situs “if they have been so used in connection with the taxpayer’s business as. *569 to acquire a business situs, or, in the absence of such a business situs, shall be at the legal domicile of the taxpayer * * [2]
LSA-R.S. 47:159, subd. H is a specific provision applying to the redemption of stock in the liquidation of corporations. The section provides that stock surrendered for property in Louisiana “shall, for purposes of determining taxable gain under this chapter, be deemed to have its taxable situs in this state to the extent that the property of the corporation distributed in liquidation is located in Louisiana.” When used in reference to stock owned by a nonresident, taxable situs means business situs.
Thus considered together, Sections 243 and 159, subd. H form a consistent pattern. Section 159, subd. H places the gain to a non-resident from the liquidation-surrender of stock for Louisiana property within the income allocation structure of Section 243.
We conclude, as did the district court, that LSA-R.S. 47:159, subd. H applies to the stock surrendered by the plaintiffs in the liquidation of the Edward Mead Johnson Corporation.
Remaining for consideration is the constitutionality of LSA-R.S. 47:159, subd. H. The plaintiffs have strenuously attacked the statute throughout this proceeding. The court, of course, has a duty to sustain it unless it clearly violates the organic law. Any doubt must be resolved in favor of the validity of a solemn expression of the legislative will.
The district court found that the Edward Mead Johnson Corporation conducted no business in Louisiana and that the assignment of a Louisiana situs to the stock was wholly fictitious and arbitrary, rendering the statute unconstitutional. We cannot agree with this holding.
 Intangible property can have no physical location. Its situs must be fixed by law.[3] We readily assume that a state cannot arbitrarily assign the situs of stock owned by a non-resident to the state for income tax purposes. The converse of this assumption, however, is a sound principle of law. When there is a reasonable basis in fact, the situs of the stock of a non-resident may be fixed in the state for tax purposes.
The Supreme Court of the United States has laid down the test in State of Wisconsin v. J. C. Penney Company:[4]
“ * * * a state is free to pursue its own fiscal policies, unembarrassed *571 by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society.
“Constitutional provisions are often so glossed over with commentary that imperceptibly we tend to construe the commentary rather than the text. We cannot, however, be too often reminded that the limits on the otherwise autonomous powers of the states are those in the Constitution and not verbal weapons imported into it. ‘Taxable event’, ‘jurisdiction to tax’, ‘business situs’, ‘extraterritoriality’, are all compendious ways of implying the impotence of state power because state power has nothing on which to operate. These tags are not instruments of adjudication but statements of result in applying the sole constitutional test for a case like the present one. That test is whether property was taken without due process of law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return.”
To apply the test, whether the state has given anything for which it can ask return, requires an examination of the facts in relation to the practical operation of the income tax statute.
The corporation owned Louisiana lands, upon which oil and gas production was developed. As a result of the mineral development, the value of the land substantially increased in the hands of the corporation. If the corporation had sold or exchanged the lands to a party other than a stockholder, the corporation would have paid a Louisiana income tax on the gain arising from the increased value.[5] LSA-R.S. 47:159, subd. H is designed to apply when the corporation, instead of selling the lands in an arms-length transaction, conveys them in liquidation to the stockholders for the redemption of their stock. In the absence of LSA-R.S. 47:159, subd. H, the gain passed on to the stockholders in the liquidation would escape the income tax.[6] The legislative policy is clear: The gain is to be taxed whether it arises from an arms-length sale by the corporation or from the vesting of the property in the stockholders in redemption of their stock.
*573 Clearly, such a gain from oil-producing lands in Louisiana reflects the protection and opportunities that the state has afforded. It is true that the state opened its doors to the business of the corporation. But the privilege of doing business in Louisiana is not the important thing here. The state also did some things in reference to the property: State laws protected the ownership, maintenance, and development of the lands; the exploration and production of minerals took place under the aegis of a conservation program created by state law and administered by state personnel ;[7] finally, the vesting of the title of these lands in the plaintiffs was accomplished under Louisiana law.
The plaintiffs attempt to discount these benefits on the theory that they accrued to the corporation, who then owned the lands, rather than to the taxpaying stockholders.
We cannot accept this theory. It overlooks the fact that the land itself benefitted as evidenced by its substantial increase in value. The stockholders realized the gain when they surrendered their stock and received the property.
The taxing power exerted by the state in the present case bears a substantial fiscal relation to the protection, opportunities, and benefits provided by the state. In short, the state has given something for which it can ask a return. We conclude that LSA-R.S. 47:159, subd. H is constitutional.[8]
For the reasons assigned, the judgment of the district court is reversed, the demands of the plaintiffs are rejected, and the suit is dismissed at plaintiffs’ costs.
HAMITER, J., dissents, adhering to the reasons originally assigned by him.
HAMLIN, J., dissents, adhering to the reasons assigned with original opinion herein.
SUMMERS, J., dissents, adhering to the original opinion.

. See Chappuis v. Reggie, 222 La. 35, 62 So.2d 92 and City of New Orleans v. Board of Supervisors, 216 La. 116, 43 So.2d 237.

. Prior to Act No. 170 of 1958.

. See Sugar ct ux. v. State of Louisiana, Collector of Revenue, 243 La. 217, 142 So.2d 401 and United Gas Corporation v. Fontenot, Collector of Revenue, 241 La. 488, 129 So.2d 748.

. 311 U.S. 435, 01 S.Ct. 240, 85 L.Ed. 207, 270-271.

. LSA-R.S. 47:243.

. The plaintiffs suggest that the tax would be collected when the property was later sold. This presupposes, of course, that the stockholders would sell it. The constitution does not require the tax be postponed.

. See LSA-R.S. 30:1-63.

. See International Harvester Co. v. Wisonsin Department of Taxation, 322 U.S. 435, 64 S.Ct. 1060, 88 L.Ed. 1373; State of Wisconsin v. J. C. Penney Co., 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267; Curry v. McCanless, 307 U.S. 357, 59 S. Ct. 900, 83 L.Ed. 1339, 123 A.L.R. 162; and Shaffer v. Carter, 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445.