**General Motors Corporation v. The State of Colorado, John H. Heckers, Executive Director of Revenue of the State of Colorado, and Palmer L. Burch, State Treasurer of the State of Colorado**

## No. 25291

**General Motors Corporation v. John H. Heckers, Executive Director of Revenue of the State of Colorado**

(509 P.2d 1260)

Decided May 7, 1973. Opinion modified and as modified rehearing denied May 29, 1973.

Hodges, Kerwin, Otten & Weeks, Joseph G. Hodges, Arthur E. Otten, Jr., Ross L. Malone, Donald K. Barnes, for plaintiff-appellant.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Eugene C. Cavaliere, Assistant, Harold L. Neufeld, Special Assistant, Bruce D. Pringle, Special Assistant, James A. Clark, Special Assistant, for defendants-appellees.

MR. JUSTICE LEE delivered the opinion of the Court.

General Motors Corporation (GM) seeks to reverse an adverse judgment in two consolidated income tax actions. Case No. One (No. 25292) involves a claim for a refund of $569,588 of Colorado state income taxes paid under protest for the years of 1959 to 1963. Case No. Two (No. 25291) is an appeal from a determination by the Director of Revenue of income tax deficiencies totaling $350,173 for the years of 1964 and 1965.

The basic claim of GM is that the income tax assessments made by the Director are invalid as being impermissible under the due process clause of Article II, Section 25, of the Colorado constitution and the due process clause and

interstate commerce clause of the United States Constitution as applied to GM.

It is GM's position that the statutory apportionment formula, under which Colorado taxed a portion of GM's income, is unreasonable and invalid in that it omits therefrom a payroll factor, thus giving no consideration to the labor factor in the production of GM's income. Therefore, GM asserts, the Director assessed income which arose in, and was taxed in, other states, thus resulting in double taxation.

GM also contends that the Director abused his discretion in failing to apply a different formula when it appeared that the two-factor formula of property and sales involved income not within Colorado's jurisdiction.

Finally, GM argues that the trial court's findings of fact are not adequately supported by the record.

From our review of the record, we conclude that the statutory formula as applied to GM in the years in question did not bear an unreasonable relationship to that portion of its income actually derived from sources within Colorado, and was free from constitutional infirmities. The findings are adequately supported by the record and we affirm the judgment.

I.

GM manufactures automobiles and sells them at wholesale to franchise dealers, including dealers within Colorado. None of the cars sold in Colorado are manufactured or assembled in this state. The component parts of the cars shipped to Colorado are manufactured in Michigan, Ohio, Indiana and New York, and the vast majority are assembled in Michigan, Missouri, and California.

Colorado levies a tax upon the net income of every corporation derived from sources within this state. C.R.S. 1963, 138-1-3. The statutory policy is designed to apportion to Colorado a fraction of the taxpayer's total income reasonably attributable to its business activities in this state. It is the method by which this fraction is determined that has been challenged.

The amount of the taxpayer's income derived from its

business activities in Colorado is calculated, after the initial allocation of certain types of income, through the application of C.R.S. 1963, 138-1-28(3)(c) and 1965 Perm. Supp., C.R.S. 1963, 138-1-37(2)(c). These statutory provisions apply a formula to the remainder of the taxpayer's total net income. The formula prescribes that one-half of the net income be multiplied by a fraction the numerator of which is the value of the taxpayer's real and tangible personal property located in Colorado and the denominator of which is the value of the taxpayer's real and tangible personal property everywhere; and that the other half of the net income be multiplied by a fraction the numerator of which is the amount of the taxpayer's gross receipts assignable to Colorado and the denominator of which is the amount of gross receipts from its business everywhere. The sum of the results is the taxpayer's Colorado net income.[1]

GM contends that because it does not manufacture any of its products in Colorado the use of a two-factor apportionment formula equally weighting sales and property resulted in the years in question in an unreasonable distortion in the amount of income it actually derived from Colorado. In other words, it contends that Colorado taxed income it derived from other states — the states of manufacture and assembly. GM criticizes the sales factor in the Colorado two-factor formula and argues that the only sound apportionment formula is a two-factor formula consisting of a property factor and a payroll factor. In the interest of uniformity with other states, however, it argues that Colorado should at least

---

[1] The 1965 Amendment to the statute made no changes in the method by which, after certain allocations are made, the amount of income of a multistate corporation derived from its activities in Colorado is calculated, except to substitute "net book value recognized for federal income tax purpose" for "value" contained in the previous provision.

In 1968 the Colorado legislature adopted the Multistate Tax Compact, 1969 Perm. Supp., C.R.S. 1963, 74-14-1, which, in the interest of uniformity, gives the multistate corporate taxpayer the option of choosing to be taxed pursuant to a three-factor apportionment formula (sales, property, and payroll) in lieu of the statutory two-factor formula (sales and property).

have taxed it under a formula used by a majority of the states, which consists of three factors — property, payroll and sales. Stated in a different way, GM is arguing that inasmuch as the Colorado apportionment formula makes no provision for the payroll factor, the formula is unconstitutional.

The constitutional propriety of using a two-factor formula consisting of property and sales in the taxation of income of a corporate taxpayer engaged in interstate commerce, insofar as we are able to determine, is a matter of first impression. Accordingly, we consider it in some detail.

II.

The testimony presented in the trial court was highly conflicting. The expert witnesses mirrored the various economic viewpoints most frequently voiced in the field of taxation of multistate corporations. GM's witnesses in essence testified that income must be spread across the entire manufacturing process which precedes the ultimate sale in order to reflect the points where the income is "actually earned." They expressed the view that sales considerations are not a sound factor in any apportionment formula because from an economic viewpoint "income is the product of capital or labor or both combined." *Stratton's Independence v. Howbert,* 231 U.S. 399, 34 S.Ct. 136, 58 L.Ed. 285. They argue that a two-factor formula consisting of a payroll factor and a property factor would more nearly result in an income figure fairly allocable to Colorado upon which the income tax could properly be levied.

The expert witness for Colorado testified that a formula based upon property and payroll incorrectly allocates the income of a multistate corporation because the two factors tend to overlap one another, giving disproportionate weight to the state of manufacture. He testified that sales are an integral consideration in any apportionment formula taxing the income of a multistate business; and that the state of sale provides valuable services and an orderly market which benefit a corporation selling its products within the state.

GM also argued hypothetically that the Colorado statutory two-factor formula and the three-factor formula consisting of

property, sales, and payroll factors, used in other states, interact in such a way as to result in double taxation of its income. Colorado, where no manufacturing takes place, would attribute to itself by the use of its sales factor, 100% of one-half of the income gained through sales in Colorado. The manufacturing states, Michigan, Missouri, and California, would apportion to themselves two-thirds of 100% of the income gained through sales in Colorado through the use of the property and payroll factors in these three-factor formulas. The result would be taxation on 116-2/3% of GM's income, or double taxation on 1/6th thereof.

The Colorado expert witness disputed the conclusions reached by GM's witnesses. He further stated every apportionment formula and method finds champions and critics among the legal, taxing, economic, and government spheres. Furthermore, even in those states applying the three-factor formula, the apportionment formula of one state is not administratively applied in the same manner as in other states using the same formula. It was also shown that in those states which use the three-factor formula inventories may be substituted for property and manufacturing costs used in lieu of payroll.[2]

It was not the trial court's function, nor ours here, to decide which formula was the most economically sound. This is a policy decision for the legislature. *Gen. Motors v. District of Columbia*, 380 U.S. 553, 85 S.Ct. 1156, 14 L.Ed.2d 68; *Northwestern Cement Co. v. Minn.*, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421. We are concerned with the constitution-

---

[2] "Of the 38 states requiring payment of such taxes, 26 employ varieties of a three-factor formula which takes into account the geographical distribution of a corporation's payroll, property and sales, generally giving equal weight to each factor. Another three use substantially the same formula, replacing the payroll factor with the broader category of manufacturing costs. Yet another three make use of a formula which incorporates the sales and property factors. Only four taxing jurisdictions use formulae based solely on the geographic distribution of corporate sales. See H.R. Rep. No. 1480, 88th Cong. 2d Sess., at 119." *Gen. Motors v. District of Columbia*, 380 U.S. 553, 559, 85 S.Ct. 1156, 14 L.Ed.2d 68.

ality of the two-factor formula as applied to GM in the years in question.

## III.

It is settled law that a state which provides an orderly market in which to transact business confers benefits which constitutionally justify the levy of an income tax. *Wisconsin v. J. C. Penney Co.,* 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267. The net income from the exclusively interstate operations of a foreign corporation may be subjected to state taxation, provided the levy is not discriminatory and is properly apportioned to local activities. *Northwestern Cement Co. v. Minn., supra.*

## IV.

GM admits that the income it derived from its activities in Colorado is subject to taxation in this state. It contends, however, that the Colorado apportionment formula consisting of the sales and property factors is intrinsically arbitrary, and that this formula as applied to GM exacts an unconstitutionally unfair demand upon GM's income.

The Colorado two-factor apportionment formula carries with it a presumption of constitutionality and the taxpayer alleging its invalidity must prove it so beyond a reasonable doubt. *Flank Oil Co. v. Tennessee Gas Transmission Co.,* 141 Colo. 554, 349 P.2d 1005; *Morgan County Junior College District v. Jolly,* 168 Colo. 466, 452 P.2d 34 (1969). A heavy burden lies on a party challenging the constitutional validity of a tax apportionment formula. He must show by "clear and convincing evidence" that the use of the particular formula results in extraterritorial values being taxed. *Butler Brothers v. McColgan,* 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991; *Norfolk and Western Railroad v. North Carolina,* 297 U.S. 682, 56 S.Ct. 625, 80 L.Ed. 977. In *Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell,* 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879, the United States Supreme Court stated the rule followed consistently in tax apportionment cases:

"* * * The difficulty of making an exact apportionment is apparent and hence, when the State has adopted a method not intrinsically arbitrary, it will be sustained until proof is

offered of an unreasonable and arbitrary application in particular cases. * * *"

We conclude that the Colorado two-factor formula consisting of sales and property factors is not intrinsically arbitrary. We have been directed to no case, and our research has uncovered none, in which a court has held such a formula to be patently unconstitutional. On the contrary, the United States Supreme Court has stated on several occasions that the constitution does not require that any specific apportionment formula be used in taxing the income of a multistate business:

"The Constitution is not a formulary. It does not demand of states strict observance of rigid categories nor precision of technical phrasing in their exercise of the most basic power of government, that of taxation. For constitutional purposes, the decision issue turns on the operation of incidence of a challenged tax. A state is free to pursue its own fiscal policies unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an ordinary, civilized· society." *Wisconsin v. J. C. Penney Co.,* 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267. Furthermore, the Supreme Court has purposefully refrained from prescribing the use of any particular formula. *See International Harvester Co. v. Evatt,* 329 U.S. 416, 67 S.Ct. 444, 91 L.Ed. 390; *Gen. Motors v. District of Columbia,* 380 U.S. 553, 85 S.Ct. 1156, 14 L.Ed.2d 68.

We are not persuaded that the case law, nor the evidence presented at trial, compel the conclusion that the sales factor is not a proper factor to be included in an apportionment formula. Moreover, the Supreme Court has consistently recognized that both the manufacture of a product and its ultimate sale contribute to a corporation's income for state income tax purposes: ". . . [T] he profits of the corporation were largely earned by a series of transactions beginning with manufacture in Connecticut and ending with sale in other states . . . ." *Underwood Typewriter Co. v. Chamberlain,* 254 U.S. 113, 41 S.Ct. 45, 65 L.Ed. 165. *See*

*also: Bass, Ratcliff & Gretton v. State Tax Commission,* 266 U.S. 271, 45 S.Ct. 82, 69 L.Ed. 282. And, as noted previously, the expert testimony at trial as to the appropriateness of a sales factor in an apportionment formula was highly conflicting.[3]

While a one-factor apportionment formula is more vulnerable to an attack of unconstitutionality (see *Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell,* 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879; *Gen. Motors v. District of Columbia,* 380 U.S. 553, 85 S.Ct. 1156, 14 L.Ed.2d 68), the two-factor formula as used in Colorado, which includes *both* a property and a sales factor, necessarily apportions the income of a multistate corporation between the states of manufacture and the states of sale. As the trial court concluded, it cannot be said to be inherently arbitrary.

### V.

Concerning the second question — whether the Colorado apportionment formula was unconstitutionally applied to GM — where a statutory formula is not intrinsically invalid, as found by the trial court, there is a strong presumption that the percentage allocation is fair. Fairness is not equated with absolute precision. In *International Harvester Co. v. Evatt,* 329 U.S. 416, 67 S.Ct. 444, 91 L.Ed. 390, the Supreme Court stated:

"* * * Furthermore, this Court has long realized the practical impossibility of a state's achieving a perfect apportionment

---

[3] There is no shortage of articles, comments, and books representing the diverse points of view on state taxation of the income of multistate businesses. Among others, see: Note, *State Taxation Of Interstate Business — Looking Toward Federal-State Cooperation,* 23 Vand. L. Rev. 1317 (1970); Comment, *State Taxation Of Interstate Commerce — The Move Toward Uniformity In Apportionment,* 36 U. Chi. L. Rev. 186 (1968); Swope, *Multistate Tax Problems,* 44 Taxes 132 (1966); Hellerstein, *Allocation And Nexus In State Taxation Of Interstate Businesses,* 20 Tax L. Rev. 259 (1965); Studenski, *The Need For Federal Curbs On State Taxes On Interstate Commerce: An Economist's Viewpoint,* 46 Va. L. Rev. 1121 (1960); Altman and Keesling, *Allocation Of Income In State Taxation,* Commerce Clearing House 1946 ed.

of expansive, complex business activities such as those of appellant, and has declared that 'rough approximation rather than precision' is sufficient. *Illinois Central Ry. Co. v. State of Minnesota,* 309 U.S. 157, 161, 60 S.Ct. 419, 442, 84 L.Ed. 670. Unless a palpably disproportionate result comes from an apportionment, a result which makes it patent that the tax is levied upon interstate commerce rather than upon an intrastate privilege, this Court has not been willing to nullify honest state efforts to make apportionments. * * *" (Emphasis added.)

In support of its position that as applied to it the formula resulted in an unfair allocation, GM contended that Colorado taxed more income than was actually earned by it in Colorado. GM's exhibit U discloses that for the year 1965 the Colorado two-factor formula apportioned .40905% of GM's total income to Colorado, while under GM's preferred three-factor formula only .3013% of its income would be attributable to Colorado, a difference between the two of .10775%. However, implicit in the trial court's findings was a lack of convincing proof to show that in fact only .3013% rather than .40905% of its total income was actually earned through business activities taking place within the state of Colorado.[4]

GM relies heavily upon the case of *Norfolk & Western Railway Co. v. Missouri State Tax Commission,* 390 U.S. 317, 88 S.Ct. 995, 19 L.Ed.2d 1201. In our view, that case lends no support to GM's position here. Rather, it demonstrates that when the allocation resulting from the application of a statutory formula is so grossly disproportionate to the actual value *factually proven,* such allocation is invalid and the tax based thereon becomes an unconstitutional burden on interstate commerce. In the present case, no grossly disproportionate allocation of income to Colorado was factually demonstrated.

GM attempted to prove that when the Colorado formula

---

[4] In order to demonstrate their position, GM's experts used the income figures for 1965. It was assumed that the evidence with respect to this year would apply in a similar manner to all other years in question.

was applied in conjunction with the three-factor formula utilized in other states where GM manufactures and assembles its cars, double taxation results in violation of the Commerce Clause of the United States Constitution.

■ The evidence demonstrated a lack of uniformity in apportionment formulas throughout the states and that there is always a possibility of some overlapping. However, the courts have consistently held that such overlapping does not present constitutional problems so long as the formula in question meets the due process requirement of attempting to fairly allocate the corporation's income. As stated by the Supreme Court in *Northwestern Cement Co. v. Minn.*, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421:

"While the economic wisdom of state net income taxes is one of state policy not for our decision, one of the 'realities' raised by the parties is the possibility of a multiple burden resulting from the exactions in question. The answer is that none is shown to exist here. This is not an unapportioned tax which by its very nature makes interstate commerce bear more than its fair share. As was stated in *Central Greyhound Lines v. Mealy,* 334 U.S. 653, 661 (1948), 'it is interstate commerce which the State is seeking to reach and . . . the real question [is] whether what the State is exacting is a constitutionally fair demand by the State for that aspect of the interstate commerce to which the State bears a special relation.' * * *"

*See also, Commonwealth v. South Philadelphia Terminal, Inc.,* 404 Pa. 293, 171 A.2d 758: *Commonwealth v. General Foods Corp.,* 429 Pa. 266, 239 A.2d 359.

■ The trial court found GM's evidence of the hypothetical double taxation to be unconvincing and insufficient to show that such result in reality would necessarily follow from use of the two-factor formula. We agree. As stated in *Northwestern Cement Co. v. Minnesota, supra:*

"* * * There is nothing [in the record] to show that multiple taxation is present. We cannot deal in abstractions. In this type of case the taxpayers must show that the formula places a burden on interstate commerce in a constitutional sense.

This they have failed to do."

### VI.

GM also argues that the Director of Revenue has abused his discretion by not using a formula other than the one prescribed in the years in question, because the application of the two-factor sales and property formula "does not properly reflect the amount of income derived from sources within this state . . . ." C.R.S. 1963, 138-1-28(5). This is merely a reiteration of the other constitutional arguments. Since we have already ruled adversely to GM's claim that the two-factor formula as applied to it is unconstitutional, this argument of abuse of discretion also fails.

### VII.

We note the extensive and thorough findings of fact, conclusions of law and order wherein the court concluded as follows:

### "ULTIMATE CONCLUSIONS

"1. The Colorado statutory formula using sales and property as equal factors is a reasonable apportionment formula and is constitutional under State and Federal constitutional provisions; further, the tax assessments levied against the plaintiff corporation utilizing Colorado's two-factor formula are valid.
"2. The use of the Colorado statutory formula does not result in a tax on extraterritorial values.
"3. There is insufficient proof that double taxation would necessarily result from the use by Colorado of a two-factor formula."

GM's criticism of the preparation and adoption by the court of the findings, conclusions and order is without merit. The significant consideration is whether they are supported by the record. *Uptime Corp. v. Colorado Res. Corp.,* 161 Colo. 87, 420 P.2d 232. Suffice it to say, we find the findings, conclusions and order to be amply supported by the record.

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE DAY do not participate.