**LONE STAR STEEL COMPANY, a Texas corporation, Plaintiff-Appellant,**

v.

**Joseph F. DOLAN, Executive Director, Department of Revenue, State of Colorado, Defendant-Appellee.**

No. 79CA0506.

Colorado Court of Appeals, Div. III.

Sept. 24, 1981.

Rehearing Denied Nov. 5, 1981.

Certiorari Granted March 15, 1982.

Welborn, Dufford, Cook & Brown, Miles C. Cortez, Jr., Beverly J. Quail, Denver, for plaintiff-appellant.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Chris J. Eliopulos, Asst. Atty. Gen., Denver, for defendant-appellee.

KELLY, Judge.

Lone Star Steel Company appeals the district court judgment affirming the determination of the Department of Revenue that it owes $22,455.10 in Colorado income tax for the years 1970, 1971, 1972, and 1973. Lone Star argues that under the Multistate Tax Compact, § 24–60–1301, C.R.S.1973, certain interest and dividend income was incorrectly characterized as business income and certain sales were erroneously apportioned to Colorado. We affirm.

Lone Star Steel is a Texas corporation engaged in the manufacture and sale of steel and steel products with its principal offices and manufacturing facilities in Texas. It is wholly owned by a New York corporation which is owned by Northwest Industries, Inc., a Delaware corporation. Lone Star has a pipe manufacturing plant in Colorado which manufactures and sells line pipe to customers located in Colorado and in other states. Some of this pipe is coated by Gaido-Lingle Company, a separately owned company, before it is shipped. The steel for this pipe is shipped from the steel manufacturing facility in Texas. The Colorado plant is managed by the Texas corporation and its bookkeeping is the responsibility of Texas personnel.

A subsidiary of Lone Star, Lone Star Steel International Sales Corporation, a Delaware corporation, is a domestic international sales corporation (DISC) under the Internal Revenue Code. It operates out of Lone Star's general offices in Texas and is managed by Lone Star personnel. It sells oil casing and tubing to domestic oil companies with overseas operations. Commissions are paid by Lone Star to the DISC on these sales.

Lone Star invests its surplus funds in unsecured promissory notes to its parent, Northwest. Funds are transferred to Northwest about two or three times a week. The terms of these notes are usually for three months and are based on the anticipatory needs of Lone Star for use of the principal in its general business operation. The notes are carried on Lone Star's books as current assets, and the interest received from those notes is deposited into Lone Star's general fund.

As permitted under § 24–60–1301, Art. III, C.R.S.1973, Lone Star elected to file its Colorado corporate income tax for the years in question under the Multistate Tax Compact. Lone Star excluded from the computation of its Colorado taxable income the dividend income from its DISC and the interest on the loans to Northwest as well as the sales of pipe wrapped by Gaido-Lingle and then shipped ultimately to out-of-state customers.

I.

The first issue presented is whether under the Multistate Tax Compact the dividends which Lone Star receives from its DISC and the interest it receives on the loans to its parent are business income to be apportioned to Colorado or non-business income allocable to Lone Star's commercial domicile. We conclude that they are business income.

Business income is defined in the Compact as:

"Income arising from transactions and activity in the regular course of a taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." Section 24–60–1301, Art. IV(1)(a), C.R.S.1973.

Non-business income is income other than business income. Section 24–60–1301, Art. IV(1)(e), C.R.S.1973.

The Compact presumes all income which arises from the conduct of a trade or business to be business income unless clearly shown to be otherwise. And, the taxpayer has the burden of proof to show, by clear and convincing evidence, that such income

is not business income. 1 Code Colo.Reg. 201–3, Department of Revenue Reg. IV. 1(a)(1).

In general, a DISC is a tax planning device "whose function is to provide a convenient bookkeeping mechanism for isolating export profits of [a domestic] enterprise." *B. Bittker & J. Eustice, Federal Income Taxation of Corporations & Shareholders* ¶ 17.14 (4th ed. 1979); *see* I.R.C. §§ 991–997. The principal function of the DISC is to sell or lease property which has been manufactured by another for ultimate use outside the United States. A DISC is not subject to federal income tax, and approximately one-half of its earnings are taxed currently to its shareholders as constructive dividends and the rest of its earnings are taxable to the shareholders upon distribution. I.R.C., *supra; Bittker & Eustice, supra.*

Here, the DISC sells oil casing and tubing manufactured by Lone Star to domestic oil companies with overseas operations and receives a commission based on those sales. The dividends received by Lone Star from the DISC, therefore, represent part of the income earned by the DISC from the sale of Lone Star's products overseas. This clearly arises from transactions in the regular course of Lone Star's business operations.

"[T]ransforming the same income into dividends from legally separate entities works no change in the underlying economic realities of a unitary business, and accordingly it ought not to affect the apportionability of income the parent receives." *Mobil Oil Corp. v. Commissioner of Taxes,* 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980).

Lone Star contends that the interest it receives on the loans it makes to its parent Northwest is not business income because it does not arise from transactions and activity in the regular course of its trade or business.

Interest income from short term securities representing investment of idle funds until needed to meet the taxpayer's ordinary business obligations is considered business income. *Montana Department of Revenue v. American Smelting & Refining Co.,* 173 Mont. 316, 567 P.2d 901 (1977); *Champion International Corp. v. Bureau of Revenue,* 88 N.M. 411, 540 P.2d 1300 (1975); *Sperry & Hutchinson Co. v. Department of Revenue,* 270 Or. 329, 527 P.2d 729 (1974); *Montgomery Ward & Co., Inc. v. Commissioner of Taxation,* 276 Minn. 479, 151 N.W.2d 294 (1967).

The notes here are purchased on a regular basis during periods of cash flow surplus and are payable when Lone Star needs the funds to pay taxes, dividends, and other business obligations. The interest is commingled with other corporate income in accounts used to pay ordinary business obligations. Thus, this is business income "arising from transactions and activity in the regular course of a taxpayer's trade or business." *See Atlantic Richfield Co. v. State (Dolan),* 198 Colo. 413, 601 P.2d 628 (1979); *see also Kraftco v. Charnes,* Colo.App., 636 P.2d 1300 (1981).

Lone Star argues that this interpretation of the Compact is unconstitutional because there is insufficient nexus between Colorado and the dividend and interest income and because it results in disproportionate taxation. Lone Star contends that the interest and dividend income comes from separate businesses not conducted in Colorado and, therefore, is not derived from its unitary steel business conducted here. We disagree.

In order to establish that this dividend and interest income is not part of its unitary business conducted in Colorado, Lone Star must show that the income was earned in a course of activities unrelated to the manufacture and sale of its steel products in Colorado. *Mobil Oil Corp. v. Commissioner of Taxes, supra; see also Joslin Dry Goods Co. v. Dolan,* Colo., 615 P.2d 16 (1980); *Caterpillar Tractor Co. v. Lenckos,* 77 Ill.App.3d 90, 32 Ill.Dec. 786, 395 N.E.2d 1167 (1981). It has not done so. In fact, the contrary has been shown. The DISC income derives from the sale of Lone Star's

steel products and the interest income derives from short term investments made in the regular course of its steel business. Hence, they are integral parts of Lone Star's steel business.

Because Lone Star's Colorado activities are part of Lone Star's unitary steel business, the required nexus is present. There need not be a nexus between specific categories of income and the taxing state.

"The requisite 'nexus' is supplied if the corporation avails itself of the 'substantial privilege of carrying on business' within the State; and '[t]he fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction.' *Wisconsin v. J. C. Penney Co.*, 311 U.S. 435, 444–445 [61 S.Ct. 246, 249–250, 85 L.Ed. 267] (1940)." *Mobil Oil Corp. v. Commissioner of Taxes, supra.*

*See also Exxon Corp. v. Wisconsin Department of Revenue,* 447 U.S. 207, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980).

▆ Nor has Lone Star proven that the amount assessed by Colorado represents an unfair apportionment. Lone Star must show by clear and cogent evidence that the apportionment formula results in extra-territorial values being taxed. *Exxon Corp. v. Wisconsin, supra; Atlantic Richfield Co. v. State (Dolan), supra; General Motors v. Colorado,* 181 Colo. 360, 509 P.2d 1260 (1973).

▆ Since Lone Star is a unitary business, Colorado may apply an apportionment formula to the taxpayer's total income to obtain a "rough approximation" of the corporate income that is "reasonably related to the activities conducted within the taxing state." *Exxon Corp. v. Wisconsin, supra,* quoting *Moorman Manufacturing Co. v. Bair,* 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978). Unless "a palpably disproportionate result comes from apportionment" the state's efforts to apportion income will not be nullified. *General Motors v. Colorado, supra.* The evidence Lone Star presented with respect to the disproportionability of income allocation is not compelling. It does not account for contributions to income which result from the functional integration and centralization of management which exist in a unitary operation. It is "misleading to characterize the income of the business as having a single identifiable 'source.'" *Mobil Oil Corp. v. Commissioner of Taxes, supra,* 445 U.S. at 438, 100 S.Ct. at 1231, 63 L.Ed.2d at 521. Lone Star has not shown that the amount apportioned by Colorado is not reasonably related to its Colorado activities.

## II.

▆ Under the Compact, business income is apportioned according to a three-part formula based on property, payroll, and sales factors. Section 24–60–1301, Art. IV(9–17), C.R.S.1973. The sales factor is determined by making a ratio between the total sales in the taxing state and total sales everywhere during the tax period.

A sale is a Colorado sale if:

"the property is delivered or shipped to a purchaser, other than the United States Government, within [Colorado] regardless of the F.O.B. point or other conditions of the sale." Section 24–60–1301, Art. IV(16)(a), C.R.S.1973.

Thus, any sale delivered to the customer within Colorado is a Colorado sale.

▆ Lone Star contends that pipe sold to out-of-state customers which Lone Star ships to Gaido-Lingle do not constitute Colorado sales. We disagree.

The line pipe manufactured in Colorado is used to transmit oil and gas and is primarily laid underground. Before being buried, this pipe must be wrapped to prevent rusting. Lone Star does not wrap its manufactured pipe. For customers who desire to have the line pipe purchased by them wrapped, Lone Star recommends Gaido-Lingle Company, a separately owned business located adjacent to the Lone Star Colorado plant. Either the customer or Lone Star arranges for the wrapping. Gaido-Lingle bills the customer directly for its services. This pipe is transported from Lone Star to Gaido-Lingle on forklifts owned and operat-

ed by Lone Star. Lone Star is required under its agreements only to transport the pipe to Gaido-Lingle. Upon delivery to Gaido-Lingle, Lone Star bills the customer for the pipe. The customer arranges for transportation from Gaido-Lingle. If the pipe is damaged by Gaido-Lingle, Lone Star voluntarily replaces the defective pipe even if it is damaged through no fault of its own. Under these facts, delivery is made in Colorado. *See American Cast Iron Pipe Co. v. Boswell*, 350 So.2d 438 (Ala.1977).

Lone Star argues that because it absorbs some of the costs of shipment and that it voluntarily replaces pipe damaged by Gaido-Lingle, the delivery to Gaido-Lingle is analogous to a temporary stop for the mere addition of material. However, all of Lone Star's obligation to the customer terminates when Lone Star delivers that pipe to Gaido-Lingle.

■ Lone Star also contends that if these are considered Colorado sales, Lone Star would be unconstitutionally subject to double taxation because other states tax these sales as well. However, the record indicates that Lone Star paid tax on these sales in other states because that is where it thought the tax was owed. Thus, Lone Star has not sustained its burden in showing that it has been subjected to multiple taxation.

Accordingly, the judgment is affirmed.

BERMAN and KIRSHBAUM, JJ., concur.