537 A.2d 1188

**William HULL et al.**

**v.**

**COMPTROLLER OF the TREASURY, INCOME TAX DIVISION.**

**No. 122, Sept. Term, 1987.**

Court of Appeals of Maryland.

March 8, 1988.

78

Charles C. Shelton (T. Scott Basik and Semmes, Bowen & Semmes, all on brief), Baltimore, for appellants.

John K. Barry, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Gerald Langbaum, Asst. Atty. Gen., all on brief), Annapolis, for appellee.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge (retired), Specially Assigned.

This case is about the assessment of income taxes by the Comptroller of the State of Maryland against two nonresident former Maryland bay pilots.

Pilots are covered by Article 74 of the Maryland Code (1957, 1983 Repl.Vol.).[1] Section 10 provides:

> Every foreign vessel and every American vessel engaged in foreign trade, including such vessels towing or being towed, when underway on navigable waters and within the boundaries of the State of Maryland, except when maneuvering during berthing or unberthing operations or shifting within the confine of a port with tug assistance and a docking master aboard the vessel, shall employ a pilot holding a valid warrant of appointment and license issued by the Board of Examiners of Maryland

---

1. This case involves the years 1980–1983. Maryland Code (1957, 1983 Repl.Vol.) Art. 74, § 20 prescribed that the provisions of the article and any regulations promulgated under it "are of no effect and may not be enforced after July 1, 1984." Therefore, in this opinion, references to Article 74 are to its provisions as they were in effect prior to 1 July 1984 and covered the years 1980–1983. The provisions appeared in the 1983 replacement to volume 6 of the Code. Citations herein to sections are to sections of Article 74 as then codified, unless otherwise indicated.

 Article 74 was reenacted effective 1 July 1984. Its sections were rearranged but there were no substantive changes in the law. *See* the 1985 cumulative supplement to the 1983 replacement of volume 6.

Pilots, or in case of refusal to take such a pilot shall themselves, their master, shipowner, charterers or ship's husband pay the said pilotage as if a pilot had been employed.[2]

The Board of Examiners of Maryland Pilots was created by the legislature. Sections 1-2. "No person shall be authorized or permitted to be a pilot unless he shall have first received a license from the Board," § 5, and after serving an apprenticeship, §§ 3-4. The Board "may make such rules and orders for the government and regulation of pilots licensed by them as they may think proper, not contrary to the provisions of [Art. 74]...." Section 9. The Board is "authorized and directed to establish, at just and reasonable rates, pilotage fees and charges...." Section 14. *See* § 13 for liability for pilot's compensation.

The pilots licensed by the Board formed the Association of Maryland Pilots. Each pilot becomes a member of the Association upon obtaining his license. As a member he has a vote in the management and operations of the Association and makes a capital contribution. A "full member pilot" is

a pilot who holds a warrant of appointment and license for any draught of water issued by the Board of Examiners of Maryland Pilots and is a member in good standing of the Association of Maryland Pilots.

Section 12(c). A "lawfully licensed pilot" is

a pilot who holds any warrant of appointment and license issued by the Board of Examiners of Maryland Pilots and is a member in good standing of the Association of Maryland Pilots.

*Id.* A pilot

shall be deemed to be inactive within the meaning of this section from and after the last day of the month (i) in which such pilot attains the age of seventy (70) years, or

---

**2.** American vessels in the coasting trade are exempt from the duty of employing a pilot. Md.Code, Art. 74, § 11.

(ii) in which such pilot elects to be placed upon the inactive list after having been a full member pilot of the Association of Maryland Pilots for twenty-five (25) years or more.

*Id.* A pilot

shall be considered permanently incapable of performing his duties within the meaning of this section from and after the date upon which (1) said pilot has been certified as such by two doctors selected by the Board of Examiners of Maryland Pilots and until such incapacity ceases to exist, or, (2) said pilot's federal or State license has been revoked for reasons of physical disability and until such license or licenses have been reissued.

*Id.*

The pilotage fees are payable to the Association as collection agent for its members. Each month a certain portion of the fees received by the Association are first turned over to the Board in

an amount equal to two hundred dollars ($200.00) or 33⅓% of the said monthly distributive portion to which a full member pilot engaged in full active service is entitled to receive for such calendar month, whichever is the greater, times the number of living pilots of the Association of Maryland Pilots who at the beginning of such month are either inactive or permanently incapable of performing their duties as hereinafter defined and who prior to becoming inactive or disabled were full member pilots of the Association of Maryland Pilots; the Board of Examiners of Maryland Pilots shall within ten (10) days after receipt of the sum or sums fixed in this subsection disburse the same equally to such of the living pilots of the Association of Maryland Pilots, who, at the beginning of the calendar month for which said payment is made, were either inactive or permanently incapable of performing their duties as pilots as hereinafter defined and who prior to becoming inactive or disabled were full member pilots of the Association of Maryland Pilots.

Section 12(a). The balance of said money available for distribution,

after the payment of all expenses, shall be distributed monthly in accordance with the bylaws of the Association of Maryland Pilots among the regular working lawfully licensed pilots of the Association; provided, however that the board of supervisors of the Association of Maryland Pilots is empowered, authorized and directed to deduct from such money collected and before such monthly distribution among the regular working lawfully licensed pilots, a certain percentage of said money, said percentage to be fixed by the Board of Examiners of Maryland Pilots to be set aside in a separate or reserve fund for replacement and repairs of major equipment. The Board of Examiners of Maryland Pilots shall hold said replacement and repair funds in trust for the benefit of the Association of Maryland Pilots. In making investments or reinvestments of the funds the Board of Examiners of Maryland Pilots shall not be limited or restricted to property of the character designated as strictly suitable for the investment of trust funds by any law of the State of Maryland, but is hereby expressly authorized and empowered to invest or hold such property as may be, in its opinion, be desirable, considering the nature and purposes of the trust; or may at its election, place the management and control of the fund, or a portion thereof, in a bank or trust company subject to State or federal regulation. The assets held in trust under the authority of this section shall not be subject to attachment or execution.

Section 12(b). The amount paid to each pilot who, before becoming inactive or disabled were full members of the Association, is identical, and does not depend upon length of service in the Association. He is guaranteed a minimum of $200 a month regardless of the Association's profits or losses.

Upon becoming inactive or upon being declared permanently disabled, a pilot loses his membership in the Associa-

tion and is paid his capital investment. He no longer receives the monthly distribution paid by the Association to regularly working full members pursuant to § 12(b). He has no voice in the management of the Association, loses his license to pilot and has no relationship with the Association. He is then neither a "full member pilot," nor a "lawfully licensed pilot," as statutorily defined. In short, he is no longer a pilot or a member of the Association.

William Hull and Thaddeus Smurlo were full member pilots, each holding a warrant of appointment and license issued by the Board for any draught of water. Each was a member in good standing of the Association. Hull elected to be placed on the inactive list in 1970 after 40 years of service. In 1976, after 20 years of service, Smurlo was considered to be permanently incapable of performing his duties. Each of them, Hull upon becoming inactive, and Smurlo upon being declared disabled, lost his license to pilot and his membership in the Association and was no longer the recipient of the monthly distribution made to the "regular working lawfully licensed pilots of the Association" pursuant to § 12(b). The capital contribution of each of them was returned. Neither of them then had a vote or any voice in the management of the Association's affairs and performed no services for or on behalf of the Association. All their connections with the Association were severed. They had nothing at all to do with it.

Effective upon Hull's becoming inactive and Smurlo's disablement, each of them began to receive the monthly distribution from the Board pursuant to § 12(a). The Association is treated as a partnership for tax purposes. The monthly distribution paid to the active members of the Association pursuant to § 12(b) is reported by the Association on tax form K–1. The monthly distribution made by the Board to inactive and disabled former members of the Association is reported by the Board on tax form 1099. Inasmuch as the inactive and disabled former pilots are not considered by the Association or the Board to be members of or partners in the Association, that portion of the pilot-

age fees collected by the Association which is turned over to the Board for distribution is not treated or reported as partnership income but as an expense of the Association.

Early in 1984, the Comptroller of the Treasury of Maryland issued a Notice of Assessment for Maryland income taxes to Hull for tax years 1980–1982 and to Smurlo for tax years 1980–1983. During the years covered by the assessments Hull and Smurlo resided in Florida and were not domiciled in Maryland. They owned no property in Maryland and performed no services in Maryland. The assessment was based on the monies received from the Board pursuant to § 12(a). Hull and Smurlo appealed to the Maryland Tax Court. It held in a combined order that the nonresident taxpayers were not subject to tax in Maryland and abated the assessments. The Comptroller appealed to the Circuit Court for Baltimore City. It reversed the order of the Tax Court and reinstated the assessments. Hull and Smurlo appealed to the Court of Special Appeals. We ordered the issuance of a writ of certiorari on our own motion before decision by that court.

Maryland Code (1957, 1980 Repl.Vol.) Art. 81, § 287, provides, in relevant part:

> A nonresident individual shall be taxable in this State on that portion of his federal adjusted gross income as is derived from ... income from business, trade, profession or occupation carried on in this State....[3]

---

**3.** Maryland Code (1957, 1980 Repl.Vol.) Art. 81, § 280(a) declares: The taxable net income of an individual taxpayer of this State shall be that taxpayer's federal adjusted gross income as defined in the laws of the United States, as amended from time to time and in effect for the corresponding taxable year, with the modifications and less the deductions and personal exemptions provided in this subtitle.
Art. 81, § 287, in effect in the years here involved, was repealed by Acts 1987, ch. 717, and a new section was enacted in lieu thereof, effective 1 July 1987. For provisions comparable to former § 287, *see* Maryland Code (1957, 1980 Repl.Vol., 1987 Cum.Supp.) Art. 81, § 280(c)(23)(i)2.

The Maryland Tax Court thought that § 287 of Art. 81 "only seeks to tax income derived from activities conducted in Maryland in which a nonresident plays some direct role." The Tax Court declared that "[t]he parties themselves appear to agree to this interpretation," and following that construction, the Tax Court found that

> the income [Hull and Smurlo] received during the subject years would not be taxable under Section 287 because [they] were no longer members of the Association of Maryland Pilots, did not provide it with any services, and did not assist in its management. [They] also did not have any capital invested in the partnership.

The Tax Court noted, "Nonetheless, the Comptroller contends that [Hull's and Smurlo's] income is taxable under Section 315 [of Art. 81]...." That section provides, inter alia:

> Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity, and no income tax shall be assessable hereunder upon the income of any partnership. All such income shall be assessable to the individual partners; it shall be reported by such partners as individuals upon their respective individual income returns, and it shall be taxed to them as individuals along with their other income....

The Comptroller argued that "[s]ince the active members of the Association of Maryland Pilots obviously do carry on business in Maryland, ... [Hull and Smurlo] are liable for tax under Sections 315 and 287." The Tax Court disagreed. It thought that Maryland Code (1975, 1985 Repl.Vol.) § 9–101(f) of the Corporations and Associations Article was dispositive. It defines a partnership to mean "an association of two or more persons to carry on as co-owners a business for profit." The Tax Court concluded:

> Since [Hull and Smurlo] have no ownership interest in the Maryland Pilots Association, the income they receive is not partnership income for purposes of Sections 287 and 315.

The Circuit Court for Baltimore City reversed the Tax Court. The court recognized that Hull and Smurlo

> are retired Maryland Bay Pilots who do not reside in Maryland and who are not domiciled in Maryland. They receive income from the Maryland Bay Pilots Association ..., a partnership for federal tax purposes, pursuant to Md.Code, Art. 74, § [12]. [They] do not have capital accounts with the Association, do not actively participate in the Association and are not considered members of the Association.

But the court pointed out Art. 81, § 287 provided that a nonresident shall be taxable on "income from business, trade, profession or occupation carried on in this State...." The court said, "The test to determine whether the income arises within the State is whether the taxing power exerted by the State bears fiscal relation to protection, opportunities and benefits given by the State, *Wisconsin v. J.C. Penney Co.,* 311 U.S. 435 [, 61 S.Ct. 246, 85 L.Ed. 267] (1940)." The court noted: "It is clear that [the income of Hull and Smurlo] that is sought to be taxed is completely dependent on the protection, opportunities and benefits provided by Maryland."

> The Association conducts its business in Maryland and it is from this business that the income has its origin. The income is then distributed to [Hull and Smurlo] pursuant to a State statutory scheme.

The court thought that the nexus required by *Penney* was satisfied, and thus, the income was taxable under Art. 81, § 287.

We do not believe that *Penney,* relied on by the circuit court, is controlling. Wisconsin had a general income tax on corporate income that was taken in. It superimposed on this tax an income tax on dividends—a tax on corporate income that was paid out. 311 U.S. at 442, 61 S.Ct. at 248-49. The case involved a Delaware corporation with its principal office in New York, where the dividends were voted and the dividend checks, drawn on New York banks, were sent out. The exaction of the tax in dispute was

apportioned to the earnings derived from Wisconsin. The court held:

> The substantial privilege of carrying on business in Wisconsin, which has here been given, clearly supports the tax, and the state has not given the less merely because it has conditioned the demand of the exaction upon happenings outside its own borders. The fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction.

*Id.* at 444–445, 61 S.Ct. at 250. *Penney* is legally and factually inapposite. We do not think that *Penney* is decisive of the resolution of this case.

The Comptroller agrees, of course, with the conclusion reached by the circuit court. But it seems that he is not enamored with the reasoning of the court in reaching that conclusion. He does not cite or refer to *Wisconsin v. J.C. Penney Co., supra,* relied on by the circuit court.

The Comptroller disagrees, of course, with the conclusion of the Tax Court. But although the conclusion he reaches is the opposite of that of the Tax Court, he approaches it along the same path followed by the Tax Court. Both the Comptroller and the Tax Court look to see whether Hull and Smurlo continued to be partners in the Association after they became inactive and disabled respectively. The Tax Court said they did not; the Comptroller says they did. The Comptroller boils the issue down:

> [R]etired partners were once members [of the Association], and the sole question is whether they *continue* as partners.

(Emphasis in original.) The Comptroller, as did the Tax Court, recognizes that the answer to this question is decisive.

The Comptroller does not dispute the significant changes, pointed out *supra,* in the status of a pilot and in his relationship with the Association by reason of his becoming

inactive or disabled. He claims, however, that "[n]one of this matters one iota in the result." He urges that, under the conformity rule, whether Hull and Smurlo are partners in the Association depends upon what the federal law considers them to be. He argues that under the federal law they are still partners. He bottoms his argument on this premise. The premise is apparent in the question he presents:

> Does Maryland tax the income of a non-resident *partner* when the partnership business is carried on in Maryland and the income to be taxed is partnership income under federal tax law?

(Emphasis added.) It shows in his statement of his argument:

> INCOME THAT IS PARTNERSHIP INCOME UNDER FEDERAL LAW IS TAXABLE BY MARYLAND WHEREVER THE *PARTNER* MIGHT BE LOCATED AND WITHOUT REGARD TO HIS OWN ACTIVE PARTICIPATION IN THE BUSINESS.

(Emphasis added.) He points out that Art. 81, § 315 "makes explicit that *partners*, not the partnership, are subject to tax." (Emphasis added.) In maintaining that Hull and Smurlo are still partners in the Association, the Comptroller refers to various federal laws and regulations. He observes:

> All these rules may seem complex but are, in fact, quite simple and provide a simple answer for this case. The Pilot's Association, while certainly an unusual entity, is, nonetheless, a partnership for federal tax purposes. That has real consequences for its *members—active or retired. They are partners.*

(Emphasis added.)

 The gap between the fact that the Association is treated as a partnership for tax purposes and the assumption that, therefore, Hull and Smurlo upon becoming respectively inactive and disabled, each remained a partner in the Association, is too wide to traverse. The Comptroller tries

to leap the gap by way of I.R.C. § 736(a)(1) (1982), but he falls short. That provision of the Internal Revenue Code prescribes, in relevant part, that "[p]ayments made in liquidation of the interest of a retiring partner . . . shall . . . be considered as a distributive share to the recipient of partnership income if the amount thereof is determined with regard to the income of the partnership. . . ." The monthly payments to Hull and Smurlo under Art. 74, § 12(a), sought to be taxed, were not made in liquidation of any interest in the Association. Their capital investment had been returned to them and they had no other interest to be liquidated. The provisions of § 12(a) are plain and unambiguous. No reasonable construction of them could lead to the conclusion that the payments, prescribed by legislative mandate, were in liquidation of a partnership interest. They simply reflected what the legislature, in its wisdom, determined was to be paid to an inactive or disabled former member of the Association for the balance of his life for past services rendered. Treas.Reg. § 1.736–1(a)(1)(i), T.D. 6832, 30 Fed.Reg. 8,574 (1965), flatly states that I.R.C. § 736 applies "only to payments made to a retiring partner . . . in liquidation of such partner's entire interest in the partnership." Nor were the amounts paid Hull and Smurlo necessarily determined with regard to the income of the partnership. They were guaranteed a minimum amount each month regardless of the partnership income, even if the Association had to borrow money to fulfill that obligation. Furthermore, the federal regulations to § 736 make perfectly clear that local law governs who is a partner. Treas.Reg. § 1.736–1(a)(1)(i) states that § 736 does not apply "if the estate or other successor in interest of a deceased partner continues as a partner in its own right under local law." Treas.Reg. § 1.736–1(a)(1)(ii) provides: "A partner retires when he ceases to be a partner under local law." The short of it is that I.R.C. § 736 does not do what the Comptroller would like it to do, namely, establish that Hull and Smurlo were still partners in the Association.

The Maryland law is of no more help to the Comptroller. Md.Code (1975, 1985 Repl.Vol.) § 9–101(f) of the Corporations and Associations Article defines "partnership" to mean "an association of two or more persons to carry on as co-owners a business for profit." *See Madison Nat'l Bank v. Newrath*, 261 Md. 321, 329, 275 A.2d 495 (1971). It follows that a person is a "partner" when he is associated with one or more other persons to carry on as co-owners a business for profit. We have spelled out earlier in this opinion the effect that the inactive and disabled status of Hull and Smurlo had on their relationship with the Association and with its active members. It is clear that Hull and Smurlo were no longer associated with the members of the Association to carry on as co-owners a business for profit. Therefore, in the contemplation of the law of Maryland, Hull and Smurlo then were not partners of the members of the Association in the trade of piloting through any connection with the Association or its members or in the operation of the piloting business.

We now look to the monthly distribution made to Hull and Smurlo to see if, in the light of Maryland law, that resulted in their being partners in the Association. We first note that the money due for pilotage services, which was the source of the contributions, was not collected by the Association as the agent of Hull and Smurlo. The Association was paid the pilotage fees as the agent for its members, and Hull and Smurlo were no longer members. So Hull and Smurlo had no tie to the collection of the funds. The monies allocated by law for inactive and disabled former members of the Association were not paid to Hull and Smurlo, but to the Board, which then sent Hull and Smurlo the amount due them. The monies paid the Board were fixed by law, Art. 74, § 12(a). The Association had no say as to the amount to be paid to the Board nor could it control the amount to be received by each inactive or disabled former member. Section 12(a) requires that the Board disburse the funds equally to such persons within 10 days after receipt. On the other hand, the Association controls

the balance of the money available for distribution after the sums have been paid to the Board and after the payment of all expenses. It is disbursed "in accordance with the by-laws" of the Association, among its "regular working lawfully licensed pilots...." Section 12(b). Therefore, the payments to the Board are an expense of the Association like any other expense except that such payments have first priority. The distribution by the Association to the active members of what is left after the payment of all expenses is a distribution of income earned by the Association. As we have seen, the distributions are treated as such by the Board and the Association and so reported by them on the appropriate federal forms. The legislative scheme is plain on the face of § 12. As Hull and Smurlo assert, the statute "clearly contemplates that payments by the Association to the Board ... for retired and disabled former pilots are not payments to partners, but rather the payment of expenses that are merely calculated according to the amount distributed to partners [except for the $200 minimum requirement]."

The upshot of the matter is that, on the undisputed facts, neither the federal law nor the law of this State supports the view that Hull and Smurlo were partners of the members of the Association during the years involved here. On the contrary, the law of Maryland, which is controlling, clearly reflects the view that they were not partners.

We have noted that the Comptroller deems "the sole question" in this case to be whether Hull and Smurlo continued as partners in the Association after they became respectively inactive and disabled. We have answered that question in the negative for the reasons hereinbefore set out. Our determination that Hull and Smurlo did not continue as partners disposes of the Comptroller's contention that the monthly payments that Hull and Smurlo received from the Board were "income from business, trade, profession or occupation carried on in this State...." Art.

81, § 287. Therefore, as nonresidents, they were not taxable on those payments in Maryland.[4]

The essential facts were undisputed. We hold that the Tax Court was not erroneous as a matter of law in abating the assessments. Maryland Code (1957, 1980 Repl.Vol., 1987 Cum.Supp.) Art. 81, § 229 (*o*). The Circuit Court for Baltimore City was wrong in reversing the judgment of the Tax Court and reinstating the assessments.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED;

COSTS TO BE PAID BY APPELLEE.

---

**4.** In the light of our decision we do not reach the constitutional question presented by Hull and Smurlo, namely, whether the Comptroller was barred from imposing the taxes by due process of law.