OPINION
Plaintiffs-appellants, Duane A. Toliver, Nelson H. Gauthier, James F. Trainer, Quentin Kurtzhals, Sammy Atkins, Stanley D. Mincks, Richard R. Woody, Jeffrey S. Roock, Scott A. Louderback, and Randy Erb (collectively "MG Drivers") appeal from a judgment of the Butler County Court of Common Pleas affirming a decision of the Middletown Tax Review Board requiring the MG Drivers to pay an income tax to defendant-appellee, city of Middletown.[1] We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
The following facts are not in dispute by the parties: The MG Drivers are residents of the state of Ohio and nonresidents of the city of Middletown, Ohio. MG Industries of Melvern, Pennsylvania, is a subcontractor with AK Steel of Middletown, Ohio. The MG Drivers work for MG Industries as truck drivers who haul a by-product produced at AK Steel to destinations outside the state of Ohio.
The MG Drivers work approximately ten hours a day. Each workday, the MG Drivers drive into the city of Middletown and park their personal vehicles at AK Steel. The MG Drivers then get into trucks owned by MG Industries and drive them to a particular destination outside the city. The MG Drivers then drive back to the city of Middletown and park the trucks at AK Steel. As a result, the MG Drivers spend approximately one hour a day driving MG Industries' trucks in the city of Middletown.
MG Industries pays the MG Drivers their salaries from Melvern, Pennsylvania. During 1997, MG Industries withheld one and one-half percent from the MG Drivers' salaries for the city of Middletown's income tax. The city of Middletown imposed its income tax on one hundred percent of the MG Drivers' salaries. However, the city of Middletown does not dispute that it does not impose its income tax on other independent drivers who come and go at AK Steel and other places within the city of Middletown.
In March 1998, the MG Drivers appealed the city of Middletown's decision subjecting them to its tax to the Middletown Tax Review Board. Following a hearing, the board upheld the city's decision to tax the MG Drivers. The board found that the MG Drivers derived their employment from within the city of Middletown via AK Steel. Payment of their wages from MG Industries in Malvern, Pennsylvania was found to be immaterial, and the amount of time actually worked within the city was not an issue. The board concluded that the MG Drivers were not entitled to a refund under applicable tax regulations because they were unable to show that their gross wages were subject to another municipality's income tax.
The MG Drivers then appealed the board's decision on questions of law and fact to the Butler County Common Pleas Court pursuant to R.C. Chapter 2506. The common pleas court found that the board's decision was not unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial reliable and probative evidence on the whole record. By its August 2, 1999 judgment entry, the common pleas court affirmed the board's decision. The MG Drivers appeal this decision pursuant to R.C. 2506.04 raising three assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFFS-APPELLANTS IN NOT FINDING THE DEFENDANT-APPELLEE'S TAX ORDINANCE AS DISCRIMINATORY.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFFS-APPELLANTS IN FINDING THE
 DEFENDANT-APPELLEE'S TAX ORDINANCE IMPOSES AN INCOME TAX UPON THE PLAINTIFFS-APPELLANTS.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFFS-APPELLANTS IN FINDING THE DEFENDANT-APPELLEE'S TAX ON INCOME CONSTITUTIONAL.
In their assignments of error, the MG Drivers challenge whether the court of common pleas properly determined that the MG Drivers owed income tax to the city of Middletown. For purposes of clarity, we will consider the MG Drivers' assignments of error together.
Initially, we note that in an administrative appeal filed pursuant to R.C. Chapter 2506, the common pleas court may find that the tax board's decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. R.C. 2506.04; Smith v. Granville Twp. Bd. ofTrustees (1998), 81 Ohio St.3d 608, 612. Subsequent appeals to this court are limited to questions of law. R.C. 2506.04; Smith
at 613; Health Mgt., Inc. v. Union Twp. Bd. of Zoning Appeals
(1997), 118 Ohio App.3d 281, 285. As the appellate court, we must determine whether the court of common pleas applied the appropriate standard of review. Dudukovich v. Lorain Metro. Hous.Auth. (1979), 58 Ohio St.2d 202, 207. Moreover, "[a]n appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope and requires the court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence."Smith at 613, quoting Kisil v. Sandusky (1984), 12 Ohio St.3d 30,34. Included within the ambit of review by the appellate court is the question of whether the common pleas court abused its discretion. Napier v. Middletown (Dec. 14, 1998), Butler App. No. CA98-06-128, unreported, at 4, citing Kisil at 34, fn. 4.
Keeping this scope of review in mind, we now turn to the specific arguments raised by the MG Drivers under their assignments of error. We initially address whether the common pleas court erred in interpreting the ordinance.
We begin by reviewing the applicable law since the proper application of the law to the facts in this case is within our province of appellate review pursuant to R.C. Chapter 2506. SeeSmith, 81 Ohio St.3d at 614-615. Further, the interpretation of a municipal tax ordinance should be consistent with the limitations imposed by state law. See Columbus Div. of Income Taxv. Boles (1992), 78 Ohio App.3d 617, 623.
Chapter 890 of the Middletown Codified Ordinances addresses the city of Middletown's earned income tax and references Article XVIII, the Home Rule Amendment, of the Ohio Constitution and R.C. Chapter 718. Section 7 of Article XVIII provides that "[a]ny municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government." Section 7, Article XVIII, Ohio Constitution. Section 3 of Article XVIII empowers municipalities "to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Section 3, Article XVIII, Ohio Constitution.
The words appearing in Section 3 of Article XVIII after the word "self-government" represent not a grant of legislative power but a limitation upon the legislative power granted by the words up to and including the word "self-government." Benjamin v.Columbus (1957), 167 Ohio St. 103, paragraph three of the syllabus. While Sections 3 and 7 of Article XVIII confer certain powers upon municipalities, and "while the provisions of that article are self-executing, the provisions of that article do notconfer any extra-territorial authority. The direct authoritygiven by that article is expressly limited to the exercise ofpowers within the municipality." (Emphasis sic.) City ofSpringfield v. All American Foods Specialists, Inc. (1993),85 Ohio App.3d 464, 468, dismissed, jurisdictional motion overruled,67 Ohio St.3d 1434, quoting Prudential Co-Operative Realty Co. v.Youngstown (1928), 118 Ohio St. 204, 207. Because the power of taxation is included in the powers of self-government, it is subject to these constitutional limitations. Thompson v.Cincinnati (1965), 2 Ohio St.2d 292, 294-295.
Further, Section 13 of Article XVIII provides that "[l]aws may be passed to limit the power of municipalities to levy taxes * * *." Section 13, Article XVIII, Ohio Constitution. The Constitution also allows the General Assembly to "restrict their power of taxation * * * so as to prevent the abuse of such power." Section6, Article XIII, Ohio Constitution. The General Assembly enacted R.C. Chapter 718 that sets forth certain limitations on a municipality's power to levy an income tax. See R.C. 718 et seq.
The import of Article XVIII of the Ohio Constitution and R.C. Chapter 718 in the interpretation of a municipal tax ordinance is that certain income may be taxed and certain income may not be taxed by a municipal corporation. See Thompson,2 Ohio St.2d at 294-297. "A municipal corporation may levy a tax on wages resulting from work and labor performed within its boundaries by a nonresident of that municipal corporation." Id. at paragraph one of the syllabus, approved and followed, Angell v. City of Toledo
(1950), 153 Ohio St. 179. There is no constitutional violation by a municipal corporation for taxing wages of its residents resulting from work and labor performed within or outside the municipality. Id. at 298. A municipal tax may also be imposed on business income generated within the boundaries of the municipality. R.C. 718.02; All American Foods Specialists,85 Ohio App.3d at 468.
Keeping in mind these constitutional and statutory limitations, we now turn to the specific language of the ordinance in dispute by the parties. The city of Middletown imposes an annual earned income tax of one and one-half percent per year "[o]n all salaries, wages, commissions and other compensation earned * * * by nonresidents for work done or services performed or rendered in the City or as a result of employment in the City. (Emphasis added.) Middletown Codified Ordinances 890.03(a)(2) ("Section 890.03(a)(2)").
The city of Middletown maintains that the phrase "as a result of employment in the City" subjects the MG Drivers' total salaries to its tax. In support of its position, the city of Middletown argues that the MG Drivers' have their base of employment within the city of Middletown because they begin and end their workday at AK Steel where their employment opportunity arises. When interpreting the ordinance, the court of common pleas stated that:
 "as a result of employment" anticipates that there can be work performed outside the City limits which is the result of being employed within the city limits. The drivers travel to the City each day and drive vehicles which are stored within the City at all times when not being used. They take a by-product produced by a corporation in the city and deliver it to other sites. While the drivers are on the road outside the City, their personal vehicles remain within the City and enjoy the protection offered by the City. Therefore, the Court finds the drivers come within the purview of the ordinance since they earn their wages "for work done or services rendered in the City or as a result of employment in the City." (Emphasis sic.)
The MG Drivers contend that the language in Section 890.03(a)(2) is ambiguous and that the ordinance should be strictly construed in their favor. The MG Drivers argue that their "employment" is not in the city of Middletown, but with an out-of-state contractor of AK Steel, MG Industries of Melvern, Pennsylvania. Alternatively, the MG Drivers argue that the city of Middletown can tax their salaries to the extent that their "work done" occurs within the city limits.
Although any doubt in the construction of taxing statutes is to be resolved in the taxpayer's favor, Gulf Oil Corp. v. Kosydar
(1975), 44 Ohio St.2d 208, the first rule of statutory construction is to look at the statute's language to determine its meaning. Lancaster Colony Corp. v. Limbach (1988), 37 Ohio St.3d 198,199. When a statute is unambiguous, it is to be applied, not interpreted. Storer Communications, Inc. v. Limbach (1988),37 Ohio St.3d 193, 194. To interpret language that is already plain is to legislate, which is not the function of the court. Sears v.Weimer (1944), 143 Ohio St. 312, paragraph five of the syllabus. However, a court cannot presume that the legislature intended to enact a law that produces an unreasonable or absurd result. Stateex rel. Cooper v. Savord (1950), 153 Ohio St. 367, paragraph one of the syllabus. A court must construe the statute to avoid such an unreasonable or absurd result if the language of the statute fairly permits. Id.
In 1995, the city of Middletown amended Section 890.03(a)(2) to add the language "or as a result of employment in the City."[2] At the same time, the city added Section 890.05(d)(2): "[i]f a taxpayer asserts the right to a refund on income for employment performed outside the City, but where the base of employment is in the City, the taxpayer must establish that he or she was taxed in another municipality for such income."
When the legislative body incorporates definitions of words and phrases, such definitions will be controlling in making a determination of legislative intent. Buena v. Columbus (1959),170 Ohio St. 64, paragraph one of the syllabus; Columbus Div. ofIncome Tax v. Boles (1992), 78 Ohio App.3d 617, 621. The phrase "work done or services performed or rendered in the City" is defined to the extent that it "includes work done or services performed by employees of the City who do not reside within the City and whose work for the City is performed on property owned by the city outside its territorial boundaries." Middletown Codified Ordinances 890.02(t).
The phrases "result of employment in the City" or "base of employment" are not defined in the ordinance or in the rules and regulations promulgated by the Superintendent of Taxation pursuant to Section 890.08. Since the ordinance does not define these phrases, words in statutes are construed in context according to the rules of grammar and common usage. R.C. 1.42; CoventryTowers, Inc. v. Strongsville (1985), 18 Ohio St.3d 120, 122.
Webster's Third New International Dictionary (1993) 1937 defines "result" as "* * * (2) something that results as a consequence, effect, issue, or conclusion; (3) something obtained, achieved, or brought about by calculation, investigation, or similar activity." "Base" is defined as "(1) the thing upon which something rests * * *; (3)(a) the fundamental part of something; basic principle; essence; foundation; basic; groundwork * * *; (6)(a) the point or line from which a start is made in an action or undertaking * * *." Id. at 180. "Employment" is defined as an "* * * (2) activity in which one engages and employs his time and energies; work in which one's labor or services are paid for by an employer * * *; (3) act of employing someone, the state of being employed." Id. at 743.
In the present case, the court of common pleas overlooked the evidence in the record revealing that the MG Drivers' employment arises from MG Industries in Melvern, Pennsylvania, not AK Steel in Middletown. The undisputed evidence reveals that the MG Drivers work for MG Industries whereby they report to the same city each day to pick up MG Industries' trucks and transport a product in interstate commerce. The evidence also reveals that the MG Drivers' payroll checks are issued from MG Industries in Melvern, Pennsylvania.
Although the MG Drivers begin and end their workday at AK Steel in the city of Middletown, the "result of employment" or "base of employment" for the MG Drivers is in Melvern, Pennsylvania. The consistent use of the phrase "in the City," reflects a legislative intent to restrict the tax on nonresidents to their work activities and/or actual employment occurring within its territorial boundaries so as not to violate Article XVIII of the Ohio Constitution.
The territorial limitations of Section 3 of Article XVIII may be overcome and a municipality may use a power of self-government beyond its territorial limits if such extension is expressed by statute. All American Food Specialists, 85 Ohio App.3d at 469. See, also, State ex rel. Bd. of Commr's. Mill Creek MetropolitanPark (1999), 86 Ohio St.3d 293, 296; Beechwood v. Cuyahoga Cty.Bd. of Elections (1958), 167 Ohio St. 369, 371. The city of Middletown does not indicate any statutory authority that would permit it to collect taxes from a nonresident performing work outside the city limits. Consequently, the city has no jurisdiction to impose its tax on the MG Drivers' earnings that are attributable to "work done" outside the city of Middletown despite the fact that MG Industries does business with AK Steel.
We therefore find that Section 890.03(a)(2) authorizes the city of Middletown to collect income taxes on that portion of the MG Drivers' salaries attributable to "work done" within the city of Middletown.
In addition to having the power to tax, the Ohio Supreme Court has also determined that a municipality must have validly exercised its power to tax so as not to violate due process.Angell, 153 Ohio St. at 185. In deciding whether a municipal tax violates due process, the Ohio Supreme Court has adopted the "fiscal relation" test set forth in Wisconsin v. J.C. Penny Co.
(1940), 311 U.S. 435, 444, 61 S.Ct. 246, 250. Id. The power to tax is validly exercised when the tax "bears a fiscal relation to the protection, opportunities, and benefits given by the [municipality], or, in other words, whether the [municipality] has given anything for which it can ask a return." Id.
Under the fiscal relation test, a municipal income tax will be justified on a nonresident who performs all of his work and receives his wages in that municipality when the city provides him with a place to work protected by the municipal government.Angell at 185; McConnell v. City of Columbus (1961), 172 Ohio St. 95,100. "[T]he burden of supplying the necessary revenue to maintain a municipality must rest on and be shared by those citizens who are provided with substantial benefits by the municipality." Thompson, 2 Ohio St.2d at 298.
However, indirect benefits, such as protections afforded the employer against fire and theft, are insufficient to sustain a tax on a nonresident who works outside the city limits as a result of being employed within the city. Miley v. City Of Cambridge, 1997 Ohio App. LEXIS 3243, at *7 (June 25, 1997), Guernsey App. No. 96 CA 44, unreported. In Miley, a fiscal relationship existed only when a nonresident construction employee performed his work within the city limits. Id.
The MG Drivers contend that the tax is unconstitutional under the Due Process Clause of the Fourteenth Amendment to the United States Constitution because there is not a sufficient nexus between the benefits and opportunities from the city of Middletown and the tax imposed upon them. The MG Drivers also argue that the tax is unconstitutional under the Commerce Clause of Clause 3, Section 8, Article 1 of the United States Constitution as applied to the states because their presence in the city of Middletown for approximately one hour each day does not create a substantial nexus or a fair apportionment of the tax.
The city of Middletown maintains that its tax imposed on the MG Drivers' total salaries comports with the Due Process Clause and the Commerce Clause because there is a substantial nexus between the tax imposed and the benefits afforded the MG Drivers. Besides providing the MG Drivers with a place to work and a place to park their personal vehicles protected by the municipal government, the city of Middletown maintains that a variety of indirect benefits provided to MG Industries are sufficient to justify its tax on the MG Drivers' total salaries. These indirect benefits include the protections to MG Industries' trucks while they are parked overnight at AK Steel and the opportunity for the MG Industries to do business within the city. The court of common pleas found that these direct and indirect benefits from the city of Middletown were sufficient to sustain a tax on the MG Drivers' total salaries.
The city of Middletown also contends that the MG Drivers never raised the issue that the tax violates the Commerce Clause before the tax board or the common pleas court. We do not agree. The MG Drivers used a Commerce Clause analysis to support their position that the city of Middletown did have a sufficient nexus or provide them with sufficient benefits to justify a tax on their total salaries.[3] We will consider the Commerce Clause argument in the context that it was raised in the court of common pleas.
In support of their argument, the MG Drivers rely on Blangersv. Dept. of Revenue and Taxation (1988), 114 Idaho 944, in which the Idaho Supreme Court held that there was not a sufficient nexus to justify the imposition of Idaho's state tax upon train crews who merely transverse the state. Id. at 952. The train crews traveled through Idaho on transcontinental trains without stopping or transacting any business within the state of Idaho. Id. The court determined that it was their employer, Burlington Northern Railroad Company ("BN"), not the train crews, who the state had afforded protections and opportunities. Id. The court also found that the train crews did not owe their livelihood to Idaho but to BN who transported them through Idaho during the course of their employment. Id. In addition, the MG Drivers argue that there is not a reasonable relationship between the tax imposed and a substantial activity within the city of Middletown. They contend that a tax can only be imposed when it is applied to an activity with a substantial nexus; fairly apportioned; does not discriminate against interstate commerce; and fairly relates to the services provided. Complete Auto Transit, Inc. v. Brady
(1977), 430 U.S. 274, 279, 97 S.Ct. 1076, 1079.
In the present case, the MG Drivers have more than just a physical presence in the city of Middletown. Unlike the train crews in Blangers, the MG Drivers do not merely transverse the city of Middletown. The MG Drivers begin and end their workday in the city of Middletown. Their presence in the city of Middletown is the result of their employer, MG Industries, conducting business with AK Steel. Because MG Industries does business with AK Steel, the MG Drivers admit in their brief that they owe their livelihood to AK Steel and MG Industries.
The MG Drivers spend approximately one hour each workday in the city of Middletown driving trucks for MG Industries. While the MG Drivers are within the city of Middletown, the city provides the MG Drivers with a place to work and park their cars afforded with protections from the municipal government. We find that these direct benefits create a substantial nexus and are sufficient under the "fiscal relation" test to justify the tax imposed on that portion of the MG Drivers' salaries attributable to "work done" within the city of Middletown. See Angell,153 Ohio St. at 185; Miley, 1997 Ohio App. LEXIS 3243, at *7-8.
However, we find that the only direct benefit the MG Drivers receive from the city of Middletown while they are outside of Middletown is the protection of fire and theft for their personal vehicles. This benefit and the indirect benefits afforded the MG Drivers through MG Industries are insufficient to justify a tax under the "fiscal relation" test for "work done" outside the city of Middletown. See Miley, 1997 Ohio App. LEXIS 3243, at *7.
We therefore conclude that the city of Middletown did not validly exercise its power to tax under Section 890.03(a)(2) and violated the due process clause to the extent that the tax was imposed on the MG Drivers' salaries attributable to "work done" outside the city of Middletown. However, the tax authorized under Section 890.03(a)(2) for "work done" within the city of Middletown is validly exercised and fairly proportioned with respect to activities that occur within the city of Middletown's territorial limits. Accordingly, the tax liability of the MG Drivers is limited to their salaries attributable to "work done" within the city of Middletown.
Having concluded that not all of their hours worked in 1997 were subject to the city of Middletown's income tax, we find that the MG Drivers are entitled to a refund based upon the hours that they were taxed for "work done" outside the city of Middletown. To the extent that the city of Middletown has construed its tax ordinances to discern a class of taxpayers entitled to refunds based upon the keeping of business records by business entities, excluding individual taxpayers such as the MG Drivers, we find that the city of Middletown has illegally and unfairly classified taxpayers. However, upon reviewing the Middletown tax ordinance and regulations, we find that there is no classification of taxpayers entitled to a refund on the basis of the type of records that are maintained by the taxpayer. There appears to be no preference under the ordinance for records kept by business entities over any other type of records for the purpose of justifying a refund.
Specifically, Section 890.05(3) of the Middletown Tax Ordinance provides that "[a] taxpayer who has overpaid the amount of tax to which the City is entitled under the provisions may have such overpayment applied to any subsequent liability, hereunder, or, at his or her election, * * * such overpayment shall be refunded. Moreover, Section 890.09(e) provides that "[e]very taxpayer shall retain records necessary to compute his tax liability under this chapter for a period of five years * * *." "Taxpayer" is defined as "a person, whether an individual, partnership, association, corporation or any other entity * * *." Middletown Codified Ordinances 890.02(s).
Under the tax ordinance, we find that there is a mandatory duty imposed on the MG Drivers to justify their tax liability by keeping records, and the ordinance allows a refund to the MG Drivers for any overpayment of such tax liability. Therefore, we conclude that the MG Drivers may justify their tax liability by records maintained by them and/or MG Industries. To hold otherwise would allow the city of Middletown to impose its tax on earnings that it has no authority to tax under the ordinance.
Based upon the foregoing, we find that the court of common pleas' decision as a matter of law is not supported by a preponderance of reliable, probative, and substantial evidence. See Smith, 81 Ohio St.3d at 613.
We now turn to the specific assignments of error. The first assignment of error is sustained. The ordinance is discriminatory as applied to the MG Drivers to the extent it has been interpreted to create a classification of taxpayers entitled to a refund based upon whether records are kept by a business or an individual taxpayer. The second and third assignments of error are sustained in part to the extent that Section 890.03(a)(2) does not authorize the city of Middletown to collect income taxes from the MG Drivers on their salaries attributable to "work done" outside the city. The ordinance is unconstitutional as applied to "work done" by the MG Drivers outside the city of Middletown since their residences and employment with MG Industries are outside the city and there is an insufficient fiscal relationship with the city of Middletown. However, the second and third assignments of error are overruled in part since Section 890.03(a)(2) does authorize the city of Middletown to collect income taxes on the fraction of their workday that the MG Drivers perform work within the city of Middletown because the tax bears a fiscal relation to the protections, opportunities and benefits received from the city of Middletown.
This cause is remanded to the Middletown Tax Review Board with instructions to determine the tax liability of the MG Drivers consistent with this opinion.
 ___________________ POWELL, P.J.
YOUNG and WALSH, JJ., concur.
[1] 1. The record indicates two different spellings for Toliver and Roock; we have used the spellings we believe are correct. We also note that the MG Drivers' August 26, 1998 memorandum and the common pleas court's July 30, 1999 decision refer to Earl W. Lutz as one of the truck drivers. However, Lutz was not listed as one of the MG Drivers in the June 2, 1998 notice of appeal to the common pleas court.
[2] 2. In May 1995, Middletown adopted Ordinance 95-057 that amended Section 890.03(a)(2) to add the language "or as a result of employment in the City." Prior to May 1995, Section 890.03(a)(2) stated that the tax was imposed "[o]n all salaries, wages, commissions and other compensation earned during the effective period of this chapter by nonresidents for work done or services rendered in the City."
[3] 3. The record reveals that that the MG Drivers maintained that the income tax on their salaries interfered with interstate commerce in the notice of appeal to the tax board on March 25, 1998. On appeal to the court of common pleas, the MG Drivers submitted an analysis under Complete Auto Transit, Inc. v. Brady
(1977), 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, in their memorandum and at the hearing.